2020 PA Super 109

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| KEVIN RAY BRADLEY | |
| Appellant | No. 1196 MDA 2019 |

Appeal from the Judgment of Sentence Entered July 3, 2019
In the Court of Common Pleas of Lycoming County
Criminal Division at No.: CP-41-CR-0000317-2018

BEFORE:  LAZARUS, STABILE, and DUBOW, JJ.

OPINION BY STABILE, J.:                     **FILED MAY 05, 2020**

Appellant Kevin Ray Bradley appeals from the July 3, 2019 judgment of sentence entered in the Court of Common Pleas of Lycoming County ("trial court"), following his jury conviction for defiant trespass under Section 3503(b)(1) of the Crimes Code, 18 Pa.C.S.A. § 3503(b)(1).  Upon review, we affirm.

In connection with his filming in the lobby of the Williamsport Bureau Police Department (the "Lobby"), Appellant was charged with defiant trespass. The case eventually proceeded to a jury trial, at which the Commonwealth proffered the testimony of Corporal Brian McGee, who testified that he was employed with the Williamsport Police Department since September of 2012. N.T. Trial, 4/2/19, at 24.  Corporal McGee further testified that he worked in a supervisory capacity at the police department, which is located "within the rear of the City Hall Building."  *Id.* at 24-25.  He explained that the police

department has two separate entrances, "one is secured and one is controlled by the shift supervisor whose [sic] sitting at the desk." *Id.* at 25. Corporal McGee testified that the police department has a lobby that is open to the public. *Id.* He stated:

> During specific times and hours, the lobby is – the door is unlocked and the public can access the duty supervisor, whoever is managing that supervisor's desk or what we call the lodge desk, has control over that particular door can secure that door at any time. There's also a button that can release the lock on that door to allow folks in and out as the watch commander desires.

*Id.*

Corporal McGee testified that, on January 25, 2018, shortly after 4:00 p.m. he had an interaction with Appellant in the Lobby. *Id.* at 25-26. Specifically, Corporal McGee recalled that as he was finishing up the shift change and roll call, an officer informed him that Appellant "was at the window." *Id.* at 25-26. Corporal McGee testified that at that time, he did not know why Appellant was at the station. *Id.* at 26. Corporal McGee recalled that, upon learning of Appellant's presence,

> I went out, as typical, I went into the watch commander's office which is still within a secure area behind a partition of glass and I immediately notice [Appellant] standing at the window and he was holding a cell phone in his hand in a manner that was obvious to me that he was recording.

*Id.* Corporal McGee explained that Appellant "was holding his cell phone, the camera was facing towards me and then I asked him immediately if he was recording and he stated yes." *Id.* at 31. Corporal McGee stated that recording was not "permitted in the area that [Appellant] was in." *Id.* at 26. In explaining the reasons for the prohibition, Corporal McGee remarked:

There's multiple reasons. One of the reasons is there could be confidential information discussed within a secure area of the police department and that's confidential information that we would not want to get out to the public, it could be detrimental to any case. The walls could be very thin and very easy to hear into another room or throughout the secure area into the lobby area.

In addition to that, multiple times throughout the day we have confidential informants that come in there who we obviously want to keep their identity safe and secure so that they are not retaliated against for any sort of case.

There's also under cover [*sic*] police officers that come in and out of there and we obviously want to keep their identity safe and secure so that there's no retaliation against them in the street.

And, victim of any crime who may want to remain anonymous or may be the victims of any sort of domestic violence or any act of that nature, we want to keep them safe and that's our duty to not allow some of that confidential information to be put out to the public.

*Id.* at 26-27. Corporal McGee further recalled that on the day of the incident, there was a posted no-filming sign in the Lobby where Appellant was standing.[1] *Id.* at 27. He testified that the sign was "to the left side" of Appellant and "about eye level, maybe a little bit above eye level." *Id.* Corporal McGee was unable to recall the exact date when the sign was posted. *Id.* He, however, testified that the sign was not put up a few days before the incident with Appellant. *Id.* at 28-29.

Recalling his interaction with Appellant, Corporal McGee testified that, upon recognizing that Appellant was filming, "I immediately instructed [him] that he needed to cease filming and I referred him to the sign which was posted at that time." *Id.* at 29. According to Corporal McGee, Appellant did

---

[1] The sign, which was admitted into evidence, stated in relevant part and in capitalized letters that "recording, taping[,] photographing strictly prohibited." Reproduced Record (R.R.) at 142a.

- 3 -

not obey his command and continued filming. *Id.* "He continued to film and he continued to state how the City of Williamsport was violating his rights, his constitutional rights, and made comments on his video asking the public to contact the police station." *Id.* Describing his response, Corporal McGee testified:

> At this point I exited the secure area of the police station and I – upon exiting the secure area I pointed to the sign and began to explain to [Appellant] the reasons for the sign being posted, confidential information and items of that nature. And then I also multiple times asked him to cease recording, multiple times asked him to leave. I instructed him that he needs to cease. I instructed him that he needs to leave multiple times over and if he did not abide by any of these then I would arrest him for the trespass.

*Id.* When Appellant continued to disobey his instruction to cease filming or leave the station, Corporal McGee "attempted to take [Appellant's] phone from him so that the recording could cease." *Id.* at 30. According to Corporal McGee:

> At that point in time there was an ***individual from the public attempting to enter***. I had no idea who the individual was. I didn't know if it was some sort of undercover officer or confidential informant, anything like that. And I also instructed [Appellant] that he was under arrest and I was preparing to take him into custody.

*Id.* (emphasis added). Corporal McGee testified that he arrested Appellant with the assistance of additional officers. He described the arrest as follows:

> [Appellant] attempted to pull away from me taking him into custody. There was a slight struggle with [Appellant], it created a disturbance, and again, something that can be clearly heard through the walls or into a secure area where there was multiple police officers and three additional officers – actually I believe there were four additional officers – exited and assisted me in taking [Appellant] into custody.

*Id.*

Thereafter, the Commonwealth introduced into evidence and played for the jury a station video depicting the incident. *Id.* at 31. Corporal McGee noted that the no-filming sign applied "equally to every member of the public who would have walked in." *Id.* Corporal McGee stated that if Appellant had complied with his command and turned off the recording, he would not have asked him to leave the station. *Id.* at 31-32.

On cross-examination, Corporal McGee acknowledged that Appellant was "well known to the department as someone who videos police." *Id.* at 32-33. Corporal McGee described the Lobby as "an area which the public has access to and I, as a supervisor or a watch commander at that desk, can control access via locking a door or keeping the door unlocked." *Id.* at 33. Corporal McGee, however, acknowledged that when the door is unlocked, any member of the public "can come in." *Id.* He further clarified that Appellant's phone, while he was filming, was pointed toward "the secure area of the police station." *Id.* Corporal McGee acknowledged that anyone could observe a confidential informant or an undercover officer enter the police station. *Id.* at 34-35. Corporal McGee also acknowledged that Appellant would have been permitted to film individuals entering the police department from the steps outside. *Id.* at 35. He also conceded that the video of the incident depicted Appellant asserting a constitutional right to film in the Lobby. *Id.* at 36. Corporal McGee testified that the Lobby door was unlocked from 9:00 a.m. to 5:00 p.m. on weekdays. *Id.* at 37.

At the close of the Commonwealth's evidence, Appellant filed a motion for judgment of acquittal, which the trial court denied. *Id.* at 41-46. Thereafter, in response, Appellant testified on his own behalf. Appellant testified that it was his "hobby or activity of videoing police and governmental agen[cies]" because he likes to hold "public officials accountable for their actions." *Id.* at 46. Appellant testified that he had been filming police for between two and three years. *Id.* at 47. He testified that he previously had filmed in the Lobby and that no one at the station at that time directed him to stop filming. *Id.* Appellant explained that he was "live streaming" on YouTube his visit to the station on the day of the incident and that he "had people watching so I had witnesses there in case something happened." *Id.* He testified that he was holding his cell phone "long ways" up, *i.e.*, vertically. *Id.* at 48. Appellant explained that he refused to obey Corporal McGee's commands to stop filming because "I feel it's my constitutional right to video record the police." *Id.* He testified that he engages in "First Amendment audits," which he described as

> Where you go to a place and stand out on a public sidewalk and record a building. It's a First Amendment right to be able to record because the Supreme Court rules that you can't trespass with your eyes. Anything you see with the eyes you can record as long as it's in public.

*Id.* at 48-49. Finally, Appellant testified that, on the day of the incident, he went to the police station to retrieve his phone. *Id.* at 49. According to Appellant, the police left him a "message on [his] machine" and "sent [him] a letter" to pick up his phone. *Id.*

On cross-examination, Appellant conceded that he did not know whether something was going to happen when he live-streamed his visit to the police station from the Lobby. *Id.* at 49. Appellant acknowledged that members of the public were permitted to observe his criminal trial, but would be prohibited from filming the same, absent permission by the court. *Id.* at 50.

After the close of evidence, closing arguments and instructions, the jury retired to deliberate. Prior to the verdict, however, the jury returned with questions. The jury asked, "With or without a sign present does the officer have the right or authority to ask [Appellant] to stop the recording in the area in the police station? Second question, if so, does he then have the authority to arrest or ask [Appellant] to leave for not complying?" *Id.* at 75-76. The trial court responded:

> The officer has a right to ask somebody to leave a public area if they were being disruptive. Being disruptive is a question of fact for you to decide and if he has the right to ask him to leave for being disruptive, then he has a right to take whatever actions are necessary to force compliance with that. That's about the only way I can explain it to you. He has a right to be in a public area unless he's doing something disruptive. Whether or not somebody is disruptive is a question of fact. If he's being disruptive, then the officer has a right to ask him to leave or arrest or whatever he has to do.

*Id.* at 76. Appellant's counsel objected to the trial court's instruction, asserting that an officer does not have a right to charge someone with defiant trespass where a person is being disruptive in a public setting. *Id.* Instead, counsel argued that the officer must charge the person with crimes related to the disruption, such as disorderly conduct. *Id.* The jury eventually returned a guilty verdict. Appellant moved to set aside the jury verdict and, once more,

for a judgment of acquittal. *Id.* at 79. Following argument, the trial court denied the motion. *Id.* at 82.

Prior to sentencing, on June 6, 2019, Appellant filed a motion for judgment of acquittal or new trial. On July 3, 2019, the trial court sentenced Appellant to, *inter alia*, one year of probation. On July 8, 2019, the trial court denied Appellant's motion for judgment of acquittal. Appellant timely appealed. Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant presents four issues for our review.

[I.] Whether the Commonwealth failed to meet its burden of proof as to [Appellant's] non-compliance with lawful conditions imposed for access to or remaining in the [Lobby]?

[II.] Whether the defiant trespass statute through the prohibition of taking video in the [Lobby] was unconstitutional as applied to [Appellant]?

[III.] Whether the Commonwealth failed to prove the required element of intent beyond a reasonable doubt?

[IV.] Whether the [c]ourt's instruction that the officer had the right to charge [Appellant] with defiant trespass if [Appellant] was being "disruptive" while in the [Lobby] was unsupported by the evidence, erroneous and unfairly prejudicial to [Appellant]?

Appellant's Brief at 5 (unnecessary capitalizations omitted). We will address each issue *seriatim*.

Although Appellant's first issue is couched as a sufficiency claim, at the core he raises only an argument under the First Amendment to the United States Constitution.[2] Appellant argues that the no-filming condition imposed via the sign in the Lobby is unlawful because it violated his right to free speech

---

[2] Appellant does not raise any state constitutional claims.

- 8 -

guaranteed under the First Amendment. Additionally, Appellant asserts that the no-filming condition displayed on the sign is unlawful since it lacks the force of law because it was not authorized by a local ordinance or statute. He claims the condition was imposed only following an oral request from the Chief of Police.

The Commonwealth concedes that the filming of police is an activity protected by the First Amendment. Commonwealth's Brief at 7. The Commonwealth, however, counters that under the circumstances of this case, the no-filming condition in the Lobby was a reasonable time, place, and manner restriction. *Id.*

The First Amendment provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or ***abridging the freedom of speech***, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances." U.S. Const. amend. I (emphasis added).

Recently, the Third Circuit Court of Appeals explained:

The First Amendment protects the public's right of access to information about their officials' public activities. It goes beyond protection of the press and the self-expression of individuals to prohibit government from limiting the stock of information from which members of the public may draw. Access to information regarding public police activity is particularly important because it leads to citizen discourse on public issues, the highest rung of the hierarchy of the First Amendment values, and is entitled to special protection. That information is the wellspring of our debates; if the latter are to be uninhibited, robust, and wide-open, the more credible the information the more credible are the debates.

To record what there is the right for the eye to see or the ear to hear corroborates or lays aside subjective impressions for objective facts. Hence to record is to see and hear more

accurately. Recordings also facilitate discussion because of the ease in which they can be widely distributed via different forms of media. Accordingly, recording police activity in public falls squarely within the First Amendment right of access to information. As no doubt the press has this right, so does the public.

*Fields v. City of Philadelphia*, 862 F.3d 353, 359 (3d Cir. 2017) (citations and quotation marks omitted).[3] The Third Circuit, however, cautioned that all recording was not protected or desirable. *Id.* at 360. "The right to record police is not absolute. It is subject to reasonable time, place, and manner restrictions." *Id.* (quotation marks omitted). In *Kelly v. Borough of Carlisle*, 622 F.3d 248 (3d Cir. 2010), the court noted that the right to videotape police is "subject to reasonable time, place and manner restrictions, as long as they are justified without reference to the content of the regulated speech, are narrowly tailored to serve a significant governmental interest, and leave open ample alternative channels for communication of the information." *Kelly*, 622 F.3d at 262. (quotation marks and citations omitted). "If a person's recording interferes with police activity, that activity might not be protected. For instance, recording a police conversation with a confidential informant may interfere with an investigation and put a life at stake." *Fields*, 862 F.3d at 360.

In *Fields*, the two plaintiffs brought Section 1983, 42 U.S.C. § 1983, claims against the City of Philadelphia and certain police officers, alleging,

---

[3] We treat decisions of the Third Circuit as persuasive authority on questions of federal constitutional law. *See Stone Crushed P'ship v. Kassab Archbold Jackson & O'Brien*, 908 A.2d 875, 883 n.10 (Pa. 2006).

*inter alia*, that the officers illegally retaliated against them for exercising their First Amendment right to record public police activity. Plaintiff Amanda Geraci attended an anti-fracking protest at the Philadelphia Convention Center. Belonging to a police watchdog group, she carried her camera and wore a pink bandana that identified her as a legal observer. When the police initiated the arrest of a protester, Geraci moved to record the arrest from a better vantage point. She did not interfere with the police. Yet, an officer abruptly pushed her and pinned her against a pillar for one to three minutes, preventing her from observing or recording the arrest. Geraci was not arrested or cited.

Plaintiff Fields, who was a sophomore at Temple University, was on a public sidewalk where he observed numerous police officers breaking up a house party across the street. The nearest officer was fifteen feet away from him. Using his iPhone, he photographed the scene. An officer noticed him taking pictures and inquired whether he liked taking pictures of grown men. The officer directed Fields to leave. He refused. The officer arrested Fields, seized his phone, and detained him. The officer ultimately released Fields and issued him a citation for obstructing highway and other public passage. Later the charges were withdrawn because the officer failed to appear at the court hearing.

Despite the defendants' decision not to argue against the existence of a First Amendment right,[4] the district court *sua sponte* concluded that the

---

[4] The defendants sought the dismissal of the case on the basis of qualified immunity.

plaintiffs' activities were not protected by the First Amendment because they presented no evidence that their conduct may be construed as expression of a belief or criticism of police activity. *Id.* at 356. On appeal, the Third Circuit disagreed, holding that "under the First Amendment's right of access to information the public has the commensurate right to record—photograph, film or audio record—police officers conducting official police activity in public areas." *Id.* at 360. The court, however, did not address the constitutional limits of this important First Amendment right because the defendants offered no justification for the action. *Id.* Accordingly, the court noted that no "countervailing concerns" existed to justify a departure from the general right to free speech under the First Amendment. *Id.*

Instantly, the Commonwealth concedes that Appellant has a constitutional right anchored in the First Amendment to videotape police activity in public places. Unlike in *Fields*, however, the Commonwealth here argues that the no-filming condition imposed in the Lobby is a reasonable justification from or restraint on free speech. We agree.

The Commonwealth presents several countervailing concerns to Appellant's argument that he had an absolute right under the First Amendment to videotape in the Lobby. Principally, the Commonwealth highlights Corporal McGee's testimony that the police department's no-filming condition in the Lobby was based on several reasons: (1) preventing the disclosure of confidential information relating to ongoing investigations discussed within secure areas of the police department; (2) safeguarding the

- 12 -

identity of confidential informants and undercover officers; (3) ensuring their safety by preventing the risk of retaliation against them; and (4) ensuring and preserving the privacy of crime victims. *See* N.T. Trial, 4/2/19, at 26-27. Indeed, the trial court found "Corporal [] McGee testified with regard to numerous grounds upon which the no[-]filming policy was based, citing confidentiality and victim safety as fundamental components." Trial Court Order, 7/5/19, at ¶ 2. Thus, the restriction or condition at issue is reasonable.

The no-filming condition applies to all members of the public who visit the Lobby. In other words, members of the public are granted a license to enter and remain in the Lobby, provided that they abide by the condition. Among other things, the no-filming condition ensures the integrity of police investigations and activity. The condition applies only to the Lobby and the interior of the police station, and not to areas outside of the police station, such as steps or entrances. Admittedly, it prohibits only the recording, taping, and photographing within the Lobby. The condition does not bar the use of parchment and quill in the Lobby. It, therefore, is a reasonable restriction under the First Amendment because it is narrowly tailored to serve a significant governmental interest, *i.e.*, to ensure the safety, security and privacy of officers, informants and victims. Moreover, it prevents interferences with police activity. Accordingly, under the circumstances of this case, the recording or filming in the Lobby by members of the public is not a protected activity under the First Amendment.

To the extent Appellant claims that the no-filming condition must have the force of law to be lawful and enforced against the public—that is, it be authorized by a local ordinance or statute—we disagree. As the Commonwealth notes and our review of the record confirms, Appellant does not cite any legal authority in support of this claim. "[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." *In re W.H.*, 25 A.3d 330, 339 n.3 (Pa. Super. 2011), *appeal denied*, 24 A.3d 364 (Pa. 2011). Because Appellant failed to cite relevant case law, develop his legal argument, or apply the law to the facts of the case regarding this contention, it is waived. *Commonwealth v. Wise*, 171 A.3d 784, 791 (Pa. Super. 2017) (issue waived where appellant provided an undeveloped argument and neglected to cite to controlling case law), *appeal denied*, 186 A.3d 939 (Pa. 2018).

We now turn to Appellant's second issue, which is intimately related to his first. Whether the defiant trespass statute, as applied to him, is unconstitutional because of the alleged constitutional infirmities of the no-filming condition imposed in the Lobby.

Preliminarily, we note:

[A]cts passed by the General Assembly are strongly presumed to be constitutional, including the manner in which they were passed. Accordingly, a statute will not be declared unconstitutional unless it clearly, palpably, and plainly violates the Constitution. If there is any doubt that a challenger has failed to reach this high burden, then that doubt must be resolved in favor of finding the statute constitutional.

*Pa. State Ass'n of Jury Comm'rs v. Commonwealth*, 64 A.3d 611, 618

(Pa. 2013) (internal citation and quotation marks omitted). In

*Commonwealth v. Brown*, 26 A.3d 485 (Pa. Super. 2011), we stated:

> When an appellant challenges the constitutionality of a statute, he or she presents this Court with a pure question of law, for which our standard of review is *de novo* and our scope of review is plenary.
>
> [As indicated], a statute is presumed to be constitutional and will only be invalidated as unconstitutional if it clearly, palpably, and plainly violates constitutional rights. Further, a defendant may contest the constitutionality of a statute on its face or as-applied. A facial attack tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case. An as-applied attack, in contrast, does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right. A criminal defendant may seek to vacate his conviction by demonstrating a law's facial or as-applied unconstitutionality.

*Brown*, 26 A.3d at 493 (citations omitted).

The criminal trespass statute provides in pertinent part:

> **(b) Defiant trespasser.--**
>
> (1) A person commits an offense if, knowing that he is not **licensed or privileged** to do so, he enters or remains in **any place** as to which **notice against trespass** is given by:
>
>> (i) Actual communication to the actor[.]
>
>   . . . .
>
> **(c) Defenses.--** It is a defense to prosecution under this section that:
>
> (2) the premises were at the time open to members of the public and the actor complied with all lawful conditions imposed on access to or remaining in the premises[.]

18 Pa.C.S.A. § 3503(b)(1), (c)(2) (emphasis added).

Here, Appellant essentially repeats his first claim, albeit differently framed. Appellant asserts that the defiant trespass statute is unconstitutional, as applied to him, because it sanctions an unlawful condition and criminalizes his right to free speech under the First Amendment. That unlawful condition, Appellant argues, is the no-filming restriction imposed in the Lobby. We adopt our conclusion above that the no-filming condition is reasonable and did not run afoul of the First Amendment. To the extent Appellant argues that the reasons advanced by the Commonwealth to justify the no-filming condition are mere conjecture and abstract, we disagree. As the Commonwealth notes:

> The video admitted into evidence showed, however an **unidentified person in civilian clothing attempted to enter the police station while [Appellant] was inside, filming**. Additionally, [Appellant's] argument regarding the particular reasons given were present at this particular time is not directly on point – the no-filming condition is not needed only when a certain situation implicating it is present; rather, the no-filming condition is needed because, in a police station, a situation implicating the condition – a victim who wishes to remain anonymous reporting a crime, or a confidential informant or undercover officer proceeding to a private area – could arise at any time and without warning in the regular course of business at a police station. It is impossible to say when such a situation requiring confidentiality will arise, and such situations will arise as a matter of course – this is a fundamental difference between the interior of the police station and the world outside.

Commonwealth's Brief at 14 (emphasis added). Accordingly, Appellant does not obtain relief.

We next address Appellant's argument that the evidence presented at trial was insufficient to establish that he had the requisite *mens rea* to commit defiant trespass.

A claim challenging the sufficiency of the evidence is a question of law."

**Commonwealth v. Widmer**, 744 A.2d 745, 751 (Pa. 2000).

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Antidormi**, 84 A.3d 736, 756 (Pa. Super. 2014), **appeal denied**, 95 A.3d 275 (Pa. 2014).

To establish defiant trespass under Section 3503(b)(1)(i), the Commonwealth must prove that a defendant (1) entered or remained upon property without a right to do so; (2) while knowing that he had no license or privilege to be on the property; and (3) after receiving direct or indirect notice against trespass. **See Commonwealth v. Wanner**, 158 A.3d 714, 718 (Pa. Super. 2017 (citation omitted). The crime of defiant trespass includes an element of intent or *mens rea*.

Here, upon our review of the evidence viewed in a light most favorable to the Commonwealth as the verdict winner, we agree with the trial court's conclusion that the Commonwealth proved beyond a reasonable doubt that

Appellant committed defiant trespass.  The trial court found that "Corporal McGee testified that he informed [Appellant] that he was not licensed to remain in the police station" if he did not cease filming.  Trial Court Order, 7/5/19, at ¶ 4.  The record, detailed above, shows that Appellant did not comply.  Instead, despite Corporal McGee's repeated commands to stop recording, Appellant continued to film in the Lobby, pointing his phone toward the secure area of the station.[5]  Accordingly, under the circumstances of this case whereby Corporal McGee gave repeated warnings to Appellant to stop filming, to cease or leave, and Appellant's refusal to comply, it is clear that Appellant had actual and direct notice that he was no longer licensed or privileged to remain in the Lobby.  Thus, based upon the foregoing and viewed in a light most favorable to the Commonwealth, we agree with the trial court that the Commonwealth proved beyond a reasonable doubt that Appellant committed defiant trespass.

Appellant also argues that he lacked the intent to commit defiant trespass because he believed he had a constitutional right under the First Amendment to videotape his visit to the police station; based on that belief, he continued to film in the Lobby.  We disagree.

The trial court and the Commonwealth correctly point out that Appellant's mistake was one of law, not fact.  If Appellant's argument were to be accepted, the Commonwealth argues, it "would provide an absolute

---

[5] While he was filming, an unknown individual attempted to enter the Lobby.

- 18 -

defense to any prosecution" where a defendant asserts a good-faith, yet erroneous, understanding of the law. Commonwealth's Brief at 15. It is well-settled that mistake of law is not a defense. **See** 18 Pa.C.S.A. § 304 *cmt.* ("Generally speaking, ignorance or mistake of law is no defense.") (citation omitted); **accord Commonwealth v. Cline**, 177 A.3d 922, 926 (Pa. Super. 2017) (citation omitted), **appeal denied**, 187 A.3d 210 (Pa. 2018).

Appellant's reliance on **Commonwealth v. Namack**, 663 A.2d 191 (Pa. Super. 1995) to compel a different outcome is unavailing. There, the defense was premised on a mistake of fact, rather than a mistake of law. We noted in **Namack** that "a *bona fide*, reasonable mistake of fact may, under certain circumstances, negate the element of criminal intent." **Id.** at 194. We ruled that the evidence was insufficient to support defendant's conviction for defiant trespass where he presented evidence that he and his family had used a trail across his neighbor's property for many years, and his attorney advised him that he had a legal right to use the trail despite his neighbor's protests. Because Appellant here asserts a mistake of law in his belief that the no-filming condition was unconstitutional, such a mistake is legally insufficient to negate the element of intent for purposes of defiant trespass. Accordingly, he is not entitled to relief.

Lastly, Appellant argues that the trial court abused its discretion in answering the last question posed by the jury prior to the jury returning a guilty verdict.

- 19 -

"When a court instructs the jury, the objective is to explain to the jury how it should approach its task and the factors it should consider in reaching its verdict." ***Commonwealth v. Chambers***, 980 A.2d 35, 49 (Pa. 2009) (quotations omitted). "In examining jury instructions, our [standard] of review is to determine whether the trial court committed a clear abuse of discretion or an error of law controlling the outcome of the case." ***Id.*** at 50 (quotations omitted). "A charge will be found adequate unless the issues are not made clear, the jury was misled by the instructions, or there was an omission from the charge amounting to a fundamental error." ***Id.*** Moreover, "[i]n reviewing a challenge to a jury instruction the entire charge is considered, not merely discrete portions thereof. The trial court is free to use its own expressions as long as the concepts at issue are clearly and accurately presented to the jury." ***Commonwealth v. Eichinger***, 915 A.2d 1122, 1138 (Pa. 2007) (quotations omitted).

Here, our review of the trial transcript reveals that the trial court instructed the jury on defiant trespass as follows:

> To find the defendant guilty of this offense you must find the following elements have been established beyond a reasonable doubt. First, that the defendant entered or remained in the [Lobby]. Second, that notice again[st] trespass was given by actual communication to the defendant. Third, that **the defendant knew that he had no permission from the owner or the authorized person after being told to leave**. Fourth, that the defendant defied an order personally communicated to him by the owner or other authorized person. If after considering all the evidence you find the Commonwealth has established these elements beyond a reasonable doubt you should find the defendant guilty of criminal trespass by a defiant trespasser.

> If not, then you must find him not guilty. The defendant cannot be guilty of criminal trespass by defiant trespasser if you find either of the following:
>
> That the location was open to the public at the time and the defendant complied with all lawful conditions imposed on access to remaining in the premises or that the defendant reasonably believed that the owner or other authorized person would have permitted him to enter or remain on the property.

N.T. Trial, 4/2/19, at 69-70 (emphasis added). During deliberation, the jury asked the trial court, "With or without a sign present does the officer have the right or authority to ask [Appellant] to stop the recording in the area in the police station? Second question, if so, does he then have the authority to arrest or ask [Appellant] to leave for not complying?" *Id.* at 75-76. The trial court responded:

> The officer has a right to ask somebody to leave a public area if they were being **disruptive**. Being **disruptive is a question of fact** for you to decide and if he has the right to ask him to leave for being disruptive, then he has a right to take whatever actions are necessary to force compliance with that. That's about the only way I can explain it to you. He has a right to be in a public area unless he's doing something **disruptive**. Whether or not somebody is disruptive is a question of fact. If he's being disruptive, then the officer has a right to ask him to leave or arrest or whatever he has to do.

*Id.* at 76 (emphasis added).

Reviewing the totality of the trial court's instruction, it is clear that the court did not abuse its discretion as the charge was adequate. We recognize that the court could have been more precise in answering the jury's last question. Instead of instructing the jury that it needed to find whether Appellant was **disruptive**, the court would have been more accurate in instructing the jury, as it had done previously during trial, that it needed to find whether Appellant had violated a condition upon his presence in the

- 21 -

Lobby. We, however, find this error to be non-prejudicial. As mentioned, the trial court previously provided the jury with proper instructions on all elements of defiant trespass. *See* N.T. Trial, 4/2/19, at 69-70. Additionally, as the Commonwealth points out, the trial court's use of the term disruptive did not prejudice Appellant and Appellant does not explain how he was prejudiced. Rather, the use of the term disruptive was more beneficial to the defense because the jury analyzed the term in the context of all evidence presented at trial, including the video of the incident. The trial evidence shows only that Appellant refused Corporal McGee's repeated calls to stop filming. Accordingly, when viewed in its entirety, the trial court's charge to the jury was not erroneous so as to warrant a new trial. *See Commonwealth v. Jones*, 858 A.2d 1198, 1201 (Pa. Super. 2004) ("A verdict will not be set aside if the instructions of the trial court, taken as a whole, and in context, accurately set forth the applicable law."); *see also Commonwealth v. Pursell*, 724 A.2d 293, 314 (Pa. 1999) ("Error cannot be predicated on isolated excerpts of the charge . . . it is the general effect of the charge that controls."); *Commonwealth v. Mickens*, 597 A.2d 1196, 1204–05 (Pa. Super. 1991) (noting that when viewed in its entirety, an isolated misstatement is insignificant where it fails to prejudice the appellant, and the charge is otherwise free of errors.).

Moreover, relying on *Commonwealth v. White*, 492 A.2d 32 (Pa. Super. 1985), Appellant challenges the trial court's instruction to the jury that it was "permitted to find [him] guilty of defiant trespass if [it] believed he was

- 22 -

being disruptive." Appellant's Brief at 29. Appellant argues that, if Corporal McGee believed he was being disruptive, he should have charged him with a crime related to the disruption.

In **White**, the defendant was terminated from a Ford Aerospace Plant and told that if he wished to be reinstated he would have to take a medical leave of absence. The defendant was given two days to decide whether to do so. The next day, the defendant went to the plant gate used by employees, visitors, business invitees, customers, job applicants, and retirees seeking medical information, and where it was normal for employees, their dependents, and retirees to come to request medical forms. The former employee was asked to leave, but stated he would not leave until he spoke to the company's Senior Labor Relations Representative about requesting medical leave and forms. After speaking with the representative, the defendant was twice asked to leave again, and upon his refusal, was arrested. The defendant was found guilty of defiant trespass. On appeal, however, we reversed, finding he had an affirmative defense under Section 3503(c)(2), which we noted was an adoption of Model Penal Code ("Code") Section 221.2.[6] Citing the notes to Section 221.2 of the Code, we stated:

> The primary objective is to **exclude criminal prosecution for mere presence** of a person in a place where the public generally

---

[6] While Section 3503(c)(2) derived from the Model Penal Code, its notes and comments are not binding on this Court. **See Commonwealth v. Brown**, 375 A.2d 331, 334 n. 4 (Pa. 1977) (while *comments* to Model Penal Code may be helpful in interpreting statutes, they were not specifically adopted by the legislature and therefore are not binding).

is invited. Persons who become undesirable by virtue of disorderly conduct may of course be prosecuted for that offense. The Section is not intended to preclude resort by the occupants to civil remedies for trespass, including his privilege, whatever it may be, of barring entry or ejecting.

*White*, 492 A.2d at 35 (emphasis added). The *White* Court found that the plant gate area was open to the public for the specific purpose for which the defendant was there and found "no evidence that the defendant failed to comply with any lawful condition imposed on his access to those premises or in any other way 'breached the peace.'" *Id.* at 36. Based on these findings, the court held that the fact that plant management revoked the defendant's invitation to be on the premises was not sufficient to remove the defendant from the protection of Section 3503(c)(2). *Id.* The defendant was charged for his mere presence in a place where the public generally is invited.

As stated, in *White* the defendant's mere presence was criminalized. There, [t]he Commonwealth presented no evidence that the defendant failed to comply with any lawful condition imposed on his access to those premises." *Id.* at 36. Here, however, Appellant deliberately failed to comply with a lawful condition for remaining in the Lobby when he refused Corporal McGee's repeated warnings to stop filming. *See* Trial Court Order, 7/5/19, at ¶ 5 (Appellant's "conduct amounted to an affirmative refusal to comply with a condition on presence."). If Appellant had complied, according to Corporal McGee's testimony, he would have been permitted to remain in the Lobby. Accordingly, Appellant's reliance on *White* is misplaced, as the facts underlying this case are distinguishable.

In sum, we conclude that (1) the no-filming condition imposed in the Lobby passes constitutional muster; (2) the offense of defiant trespass was not unconstitutional as applied to Appellant; (3) the Commonwealth presented sufficient evidence beyond a reasonable doubt to establish that Appellant possessed the necessary *mens rea* to commit defiant trespass; and (4) the trial court did not abuse its discretion in instructing the jury. Thus, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/05/2020