J-S36028-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                                          :            PENNSYLVANIA
                    Appellee                   :
                                                          :
              v.                                    :
                                                          :
CURTIS FRANKLIN                          :
                                                          :
                    Appellant                  :        No. 1261 WDA 2021

Appeal from the Judgment of Sentence Entered July 27, 2021
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0000044-2021

BEFORE:   STABILE, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KING, J.:                          **FILED:  April 28, 2023**

Appellant, Curtis Franklin, appeals from the judgment of sentence entered in the Allegheny County Court of Common Pleas, following his jury trial convictions for involuntary deviate sexual intercourse ("IDSI"), criminal solicitation, aggravated indecent assault of a child, two counts of criminal attempt-rape, indecent assault-person less than 13, endangering the welfare of children ("EWOC"), corruption of minors, and indecent exposure.[1]  We affirm.

The trial court set forth the relevant facts and procedural history of this case as follows:

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3123(b); 902(a); 3125(b); 901(a); 3126(a)(7); 4304(a)(1); 6301(a)(1)(ii); and 3127(a), respectively.

The convictions arose out of a series of incidents that took place over a period of approximately seven years, starting when J.C. [("Victim")] was 8 years old. Appellant is the paternal great uncle of [Victim]. [Victim] testified that during this seven year period, she and her family, which consisted of her mother, father and three brothers, moved three times. With each move, Appellant maintained a presence with the family, either through temporarily living with them or by helping to babysit and/or care for [Victim], and her siblings. Through the collective testimony of [Victim]'s parents, Ms. Cannon and Mr. Walker, it was clear that Appellant was a constant presence in the family's life. He benefited as a trusted member of the family as Ms. Cannon and Mr. Walker assisted him with housing, took him to medical appointments, helped with his care, and ran errands for him.

The abuse began when Appellant lived with [Victim] and her family at a home located in McKees Rocks. During a time when [Victim]'s father was in the hospital, Appellant was watching her and her siblings. On a day when her mother was at the hospital visiting her father, [Victim] testified that Appellant touched her chest area and vagina beneath her clothing. Although [Victim] was unable to provide a specific date for this incident, her mother testified that the family lived at the McKees Rocks residence when [Victim] was between the ages of 6 and 12 years old and her father testified that he was hospitalized in 2014.

The family then moved from McKees Rocks to a home on Clairhaven Street in Crafton. Although Appellant did not live with them at this home, he was a visitor and occasionally stayed overnight. On one particular overnight stay, Appellant was allowed to sleep in [Victim's] bedroom. It was during this night that [Victim] awoke to Appellant performing oral sex on her. She detailed that she was dressed in a shirt and pants, but that when she woke up both her pants and underwear were pulled down to her ankles. She detailed that Appellant stopped when he heard a noise and she fled into a bathroom and locked herself inside.

When [Victim] was in the 6th grade her family moved to their current residence located on Lawson Avenue in Crafton.

Although Appellant did not live with them, he remained a frequent visitor and stayed overnight. The abuse continued as he created opportunities to be alone with [Victim] to perpetrate the abuse by asking [Victim]'s parents to run errands for him. She testified to numerous incidents. Sometimes he would touch her buttock or her chest when he came into a room, but the abuse continued to escalate.

One day [Victim] was alone in a bedroom when Appellant pulled down her pants and underwear and attempted to vaginally penetrate her with his penis. [Victim] testified that she shielded her vagina with her hand and could feel his penis push up against her hand. Although Appellant was unable to perform penile penetration on this day, Appellant did penetrate [Victim]'s vagina with his fingers, despite her physical efforts to get away. Appellant attempted vaginal intercourse with [Victim] a second time while her parents were out of state and he was in charge of supervising the children. On this day, [Victim] was laying on the living room couch watching television when Appellant laid on top of her. Appellant pulled down [Victim]'s pants and underwear and attempted vaginal intercourse, but again she was able to block him with her hand. Appellant's abuse of [Victim] also included repeated requests for her to perform oral sex on him.

The trauma from these years of sexual abuse led to [Victim] self-mutilating, by cutting her skin with razor blades. Her mother discovered this in November of 2020 and [Victim] then disclosed the abuse to her mother, which led to a criminal investigation and subsequent charges in this case.

An expert in the field of child sexual abuse and disclosure, called by the Commonwealth, provided testimony about how and why children may delay disclosing abuse and that cutting or other forms of self-harm are ways sexual abuse victims act out on the pain.

Appellant testified at trial that he moved from Chicago to Pittsburgh to have access to medical treatment for underlying health issues. He confirmed that he either lived with [Victim]'s family or was a frequent visitor who also supervised the children at times, but denied that he ever sexually abused [Victim].

- 3 -

J-S36028-22

(Trial Court Opinion, filed 2/17/22, at 4-6).

During a charging conference, Appellant's counsel objected to the court instructing the jury with standard jury instruction 3.09—credibility of defendant as witness.[2]  The court overruled Appellant's objection and gave the following instruction to the jury:

> Court: The defendant took the stand as a witness in this case.  In considering the defendant's testimony, you are to follow the general instructions I just gave you for judging the credibility of any witness.  You should not disbelieve the defendant's testimony merely because he is the defendant.  In weighing his testimony, however, you may consider the fact that he has a vital interest in the outcome of this trial.  You may take the defendant's interest into account just as you would the interest of any other witness along with all of the other facts and circumstances bearing on credibility in

_____

[2] Pennsylvania Suggested Standard Criminal Jury Instruction 3.09 provides in relevant part:

> 3.09 CREDIBILITY OF DEFENDANT AS WITNESS: INTEREST, PRIOR CONVICTION, REPUTATION
>
> 1. The defendant took the stand as a witness.  In considering the defendant's testimony, you are to follow the general instructions I gave you for judging the credibility of any witness.
>
> 2. You should not disbelieve the defendant's testimony merely because [he] [she] is the defendant.  In weighing [his] [her] testimony, however, you may consider the fact that [he] [she] has a vital interest in the outcome of this trial.  You may take the defendant's interest into account, just as you would the interest of any other witness, along with all other facts and circumstances bearing on credibility in making up your minds what weight [his] [her] testimony deserves.

Pa. SSJI (Crim), §3.09 (1), (2).

making up your minds what weight his testimony deserves.

(N.T. Trial, 5/10/21, at 298).

The jury found Appellant guilty of all charges on May 11, 2021. On July 27, 2021, the court sentenced Appellant to an aggregate of 22 to 44 years of incarceration followed by a period of five years of probation. Appellant filed a timely post-sentence motion on August 6, 2021, which the court denied on September 22, 2021. On October 22, 2021, Appellant filed a timely notice of appeal. The court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal on October 28, 2021, and Appellant complied on December 2, 2021.

Appellant raises the following issue for our review:

> Was Appellant denied his right to a fair trial and to due process of law when his jury was instructed that jurors could and should, "in weighing [Appellant's] testimony, … consider the fact that he ha[d] a vital interest in the outcome of his trial[?]"

(Appellant's Brief at 2).

Appellant argues that the trial court erred by reading the "credibility of defendant as witness" instruction to the jury because it improperly instructed the jury to scrutinize Appellant's testimony based on Appellant's vital interest in the outcome of the trial. Appellant claims this instruction was particularly improper in this case because Appellant was accused of a crime that is reviled and the outcome of the trial hinged entirely on credibility. Appellant avers that the instruction was also unnecessary because the court had already

instructed the jury on credibility of witnesses generally twice before reading the "credibility of defendant as witness" instruction. Appellant concludes the court's reading of this instruction was unnecessary, improper, and unduly prejudicial, and this Court should grant relief. We disagree.

Our standard of review over a challenge to jury instructions is as follows:

> When a court instructs the jury, the objective is to explain to the jury how it should approach its task and the factors it should consider in reaching its verdict. In examining jury instructions, our standard of review is to determine whether the trial court committed a clear abuse of discretion or an error of law controlling the outcome of the case…. Moreover, in reviewing a challenge to a jury instruction the entire charge is considered, not merely discrete portions thereof. The trial court is free to use its own expressions as long as the concepts at issue are clearly and accurately presented to the jury.

*Commonwealth v. Bradley*, 232 A.3d 747, 759 (Pa.Super. 2020) (internal citations and quotations omitted).

> A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions.

*Commonwealth v. Baker*, 963 A.2d 495, 507 (Pa.Super. 2008), *appeal denied*, 606 Pa. 644, 992 A.2d 885 (2010) (internal citation omitted). Additionally, "[t]he Suggested Standard Jury Instructions themselves are not binding and do not alter the discretion afforded trial courts in crafting jury instructions; rather, as their title suggests, the instructions are guides only."

*Commonwealth v. Eichinger*, 631 Pa. 138, 178, 108 A.3d 821, 845 (2014).

Instantly, the court's instruction to the jury was nearly identical to standard jury instruction 3.09. There is nothing in the court's phrasing of the instruction that implied Appellant provided false testimony. The instruction also did not suggest to the jury to evaluate Appellant's credibility in a different way than any other witness because of his interest in the outcome. To the contrary, the court's instruction cautioned the jury against assessing Appellant's credibility solely based on his status as the defendant. It further instructed the jury to take Appellant's interest in the outcome of the case into account in weighing credibility in the same manner that the jury would do so for any other witness. Consequently, the instruction served to reinforce to the jury that it should evaluate Appellant's testimony based on the same factors of credibility as other witnesses. As such, there is no merit to Appellant's claim that the court's instruction erroneously suggested to the jury to specially scrutinize Appellant's testimony. Accordingly, we discern no error in the court's instruction, and Appellant's sole issue on appeal fails. *See Bradley, supra*; *Baker, supra*. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  4/28/2023