J-S01029-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN ZEIGLER | : | |
| | : | |
| Appellant | : | No. 590 WDA 2025 |

Appeal from the Judgment of Sentence Entered April 21, 2025
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-SA-0000106-2025

BEFORE:   BOWES, J., PANELLA, P.J.E., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.:                **FILED: March 25, 2026**

John Zeigler appeals *pro se* from the judgment of sentence imposed on April 21, 2025, for his conviction of criminal trespass.[1] Zeigler argues his constitutional rights were violated. After careful review, we affirm.

Zeigler was charged with criminal trespass after he disrupted and refused to leave a school board meeting. He proceeded to a summary trial and was found guilty. He appealed his conviction to the court of common pleas. The trial court set forth the factual basis for his conviction as follows:

> Robert Ostrander, the school board president of the West Allegheny School District on November 20, 2024, testified as follows regarding [Zeigler's] conduct during the public comment part of a school board meeting held that date:

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 3503(b)(1)(i).

[A]. Mr. Zeigler didn't like the answer to the initial question he had asked, so he moved on to a secondary question, which he again did not agree with the answer or the explanation given to him concerning certain district expenditures. [Zeigler] then requested more information, wanted more specifics about the particular expenditures, which at that time his demeanor continued to escalate and become more disruptive to the meeting.

Q. Did he address you with any vulgar language or profanity?

A. At one point in the meeting Mr. Zeigler did express to the board, using expletives, that he was not going to follow our rules and that we didn't have the constitutional authority to conduct the meeting and spend the money, which we informed Mr. Zeigler that we do have those authorities. And we had informed him that if he did not behave in a reasonable manner that he would be asked to leave the meeting, which then escalated Mr. Zeigler's demeanor even higher.

At one point he began to read a statement from his cell phone. He rose from the audience, approached the board, the seated board members, in which case an officer stepped between [] Mr. Zeigler and the board. The meeting was recessed for about 15 minutes to try to deescalate the situation. The officers spoke to Mr. Zeigler during the recess, I spoke to Mr. Zeigler during the recess, our board vice-president and several other members spoke to Mr. Zeigler during the recess period, explaining to him that he is more than welcome to stay at the meeting but he needs to conduct himself in a reasonable manner and follow the rules of our board proceedings, which then he proceeded to tell us that he had no intention to follow the rules and he would do whatever he deemed necessary.

After a short period the meeting was reconvened, which almost immediately Mr. Zeigler began to disrupt the meeting again. I began to warn Mr. Zeigler several times that he needed to come to order, which he

refused, at which time I had asked for him to be removed from the facility.

THE COURT: I just want to be clear, you asked him to leave and he refused?

THE WITNESS: Several times, yes.

THE COURT: And what do you mean you had him removed?

THE WITNESS: I asked the officers to escort him out of the proceedings.

THE COURT: And did they?

THE WITNESS: Yes.

[N.T. Summary Appeal, 4/21/25, at 18-20].

Findlay Township police officer Miguel Amaya was providing security for the meeting that night. His testimony was consistent with Ostrander's. [The trial court] accepted their testimony as credible.

Trial Court Opinion, 8/21/25, at 1-2 (brackets omitted).

At the conclusion of the summary appeal hearing, the trial court found Zeigler guilty and sentenced him to a $300 fine plus court costs. Zeigler filed a timely notice of appeal and complied with the court's order to file a Rule 1925(b) statement. *See* Pa.R.A.P. 1925(b). The trial court authored its Rule 1925(a) opinion on August 21, 2025.

Zeigler raises five issues for our review:

1. Whether the trial court violated [Zeigler's] rights under Article [I], Sections 6, 25, and 26 of the Pennsylvania Constitution, and Article III, Section 2, Clause 3 and Amendment VI of the United States Constitution by denying [Zeigler] access to a trial by jury in a matter involving expression in a public forum[?]

2. Whether the trial court violated [Zeigler's] rights under Article I, Sections 1, 7, 20, 25, and 26 of the Pennsylvania Constitution and Amendment I to the United States Constitution by failing to recognize [his] conduct and speech was in a public forum[?]

3. Whether the trial court violated [Zeigler's] rights under Article I, Sections 6, 20, 25, and 26 of the Pennsylvania Constitution and Amendments I and VI of the United States Constitution by sua sponte prohibiting [his] cross-examination of the complainant[?]

4. Whether speech and petitioning activity at a public school board meeting may be lawfully converted into "defiant trespass[?]"

5. Whether the trial court violated [Zeigler's] rights under Article I, Sections 7,11, 25, and 26 of the Pennsylvania Constitution by threatening contempt and chilling [his] speech when [he] was criticizing and describing the actions of [his] government[?]

Appellant's Brief, at 4-5.[2]

Before we address the merits of Zeigler's claims, we must determine if he waived them as the Commonwealth asserts. The Commonwealth argues Zeigler waived his claims for failing to develop them, as Zeigler only cites the Pennsylvania and United States Constitutions and does not offer any other authorities to support his claims. **See** Appellee's Brief, at 18.

Pursuant to Rule 2119, an appellant must include in his argument section the discussion of and citation to authorities "deemed pertinent." Pa.R.A.P. 2119(a). Zeigler believes he has cited to the pertinent authorities. **See** Appellant's Reply Brief, at 4-5. While we find that he was very selective

---

[2] Appellant's brief does not include pagination. As such, all page numbers in the brief have been added for ease of reference.

in his citation to authorities, and did not cite to all pertinent authority, we decline to find the claims waived because the defects do not prevent our review. **See Commonwealth v. Neafie**, 341 A.3d 813, 817 (Pa. Super. 2025) (declining to find a claim waived because our Court is able to provide meaningful review).

In his first claim, Zeigler asserts he had a right to a jury trial. **See** Appellant's Brief, at 5-8. As noted above, he simply quotes the constitutional provisions and does not discuss any case law applicable to his issue. **See id.** This issue does not merit relief.

"The right to a jury trial under the Sixth Amendment to the United States Constitution and Article I, §§ 6, 8 of the Pennsylvania Constitution applies when a criminal defendant faces a sentence of imprisonment exceeding six months." **Commonwealth v. McMullen**, 961 A.2d 842, 847 (Pa. 2008) (citations omitted). Zeigler was charged and convicted of criminal trespass under subsection 3503(b)(1)(i), a summary offense. **See** 18 Pa.C.S.A. § 3503(b)(2). Therefore, Zeigler only faced a possible maximum sentence of 90 days of incarceration. **See** 18 Pa.C.S.A. § 106(c)(2), 18 Pa.C.S.A. § 1105. Because Zeigler was not facing imprisonment exceeding six months, he was not entitled to a jury trial. This claim fails.

We next address Zeigler's second and fourth claims together, as they rely upon the same constitutional provisions and make the same argument. Zeigler asserts "[t]respass presupposed a private domain." Appellant's Brief,

at 10. He asserts, because he is a member of the public in a public place, no rules could be placed upon him. *See id.* at 13. Again, Zeigler does not provide any case law to support his proposition. Zeigler further argues he was "there to peaceably petition [his] government" and that he had a right "deliver[] a remonstrance—as is defined as a forcefully reproachful protest." *Id.* at 11. He claims he did not exceed his constitutional authority in his behavior that day. *See id.* We disagree.

While Zeigler does not claim to have established the affirmative defense of subsection 3503(c)(2), we find the cases detailing this defense persuasive in addressing Zeigler's assertions. Subsection 3503(c)(2) provides:

> It is a defense to prosecution under this section that:
>
> \*\*\*
>
> > (2) the premises were at the time open to members of the public and the actor complied with all lawful conditions imposed on access to or remaining in the premises[.]

18 Pa.C.S.A. § 3503(c)(2).

In ***Commonwealth v. Tate***, 432 A.2d 1382 (Pa. 1981) the Pennsylvania Supreme Court addressed this affirmative defense regarding a protest at Muhlenberg College. *See Tate*, 432 A.2d at 1386. At the time of the protest, Muhlenberg College was open to the public and hosting then-director of the FBI, Clarence Kelley, who was speaking at a symposium. *See id.* at 1384. Appellants therein were members of a non-violent anti-war organization who sought to distribute leaflets to members of the public

attending the symposium. *See id.* On the third day, appellants were arrested and charged with criminal trespass for distributing the leaflets even though they did not engage in any disorderly conduct, were not loud or offensive, and made no attempt to enter any of the buildings. *See id.* at 1385.

The Pennsylvania Supreme Court reversed their convictions. *See id.* at 1391. The Court held "by providing an affirmative defense to prosecution when property is 'open to members of the public' and an alleged trespasser has complied with all 'lawful conditions' for access, the statute reflects a proper and necessary accommodation by the Legislature of the right to freedom of expression." *Id.* at 1389 (citation omitted). The Court then found that "[t]o determine whether the appropriate circumstances exist here, we must balance the college's right to possess and protect its property against appellants' rights of expression in light of the compatibility of that expression with the activity of the particular place at the particular time." *Id.* at 1390 (citations omitted).

Because appellants therein had communicated their views "peacefully and unobtrusively," their convictions could not stand. *Id.* As they did not violate the lawful conditions imposed upon them, their convictions violated their "rights to freedom of speech, assembly, and petition constitutionally guaranteed by this Commonwealth to its citizens[.]" *Id.* at 1391.

In 1985, this Court discussed the applicability of the affirmative defense. *See Commonwealth v. White*, 492 A.2d 32 (Pa. Super. 1985). This Court

noted the affirmative defense was based upon the Model Penal Code, which stated:

> The primary objective is to exclude criminal prosecution for mere presence of a person in a place where the public is generally invited. Persons who become undesirable by virtue of disorderly conduct may of course be prosecuted for that offense. The Section is not intended to preclude resort by the occupant to civil remedies for trespass, including his privilege, whatever it may be, of barring entry or ejecting.

*Id.* at 35 (citation and footnote omitted). Recognizing *Tate*, this Court held "[t]his statutory defense merely requires that the defendant be in a place open to the public and that he comply with all lawful conditions imposed on access to or remaining on the premises." *Id.*

In 2020, this Court addressed an as-applied constitutional challenge to section 3503 where the defendant recorded police inside the public entrance of a police station. *See Commonwealth v. Bradley*, 232 A.3d 747 (Pa. Super. 2020). The right to record police is an activity protected by the First Amendment's right to free speech. *See id.* at 753. However, this right "is subject to reasonable time, place, and manner restrictions." *Id.* at 754 (citation and internal quotation marks omitted). This Court held that the no-recording restriction inside the police station's public entrance was a reasonable restraint on the right to free speech. *See id.* at 755. This Court upheld Bradley's conviction for criminal trespass as it was subject to a lawful condition. *See id.* at 756.

Therefore, Zeigler's constitutional rights must bend to reasonable time, place, and manner restrictions. **See Commonwealth v. Scott**, 878 A.2d 874, 880 (Pa. Super. 2005) ("It is well-established … that a governmental entity may impose, even in public forums, reasonable time, place and manner restrictions on protected speech.") (citation omitted). Zeigler continually breached the peace and refused to comply with the lawful conditions imposed upon all members of the public that attended the school board meeting. Even when given an opportunity to remain if he followed the rules, *i.e.*, the lawful conditions requiring civility, he refused and immediately interfered with the meeting. We therefore find Zeigler's second and fourth claim do not merit relief.

Next, Zeigler challenges the trial court's restriction of his cross-examination of Ostrander. Zeigler asserts his questions to Ostrander regarding whether Ostrander took an oath were relevant because they "[went] to his bias and credibility[.]" Appellant's Brief, at 12. Zeigler does not explain how the oath of office would establish Ostrander's bias and credibility and we agree with the trial court that this line of questioning was not relevant to whether or not Zeigler committed the offense of criminal trespass.

The standard of review regarding the limits of cross-examination is well-settled:

> [T]he trial court has broad discretion regarding both the scope and permissible limits of cross-examination. The trial judge's exercise of judgment in setting those limits will not be reversed in the absence of a clear abuse of that discretion, or an error of law.

The Confrontation Clause in the Sixth Amendment to the United States Constitution provides that all criminal defendants enjoy the right to confront and cross-examine adverse witnesses. …

Although the right of cross-examination is a fundamental right, it is not absolute. The trial court may place reasonable limits on defense counsel's [or a *pro se* litigant's] cross-examination of a prosecution witness based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. Generally speaking, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.

*Commonwealth v. Rosser*, 135 A.3d 1077, 1087-88 (Pa. Super. 2016) (*en banc*) (citations and quotation marks omitted).

The following occurred during Zeigler's cross-examination of Ostrander:

Q. Mr. Ostrander, did you take an oath to the Pennsylvania Constitution?

A. I took an oath to the office, which I was duly elected to serve.

THE COURT: Let's move off that subject. That doesn't help me at all. Do you have another relevant question?

MR. ZEIGLER: Yes, I do.

…

Q. Do I have the right to petition you?

A. I assume you do, yes.

Q. You would assume I do?

THE COURT: Excuse me. We're getting far afield from the issue of whether you are guilty of defiant trespass, sir. Next question.

MR. ZEIGLER: At this point, Your Honor, I'd no longer like to contest this case until it's before a jury.

THE COURT: Pardon me?

MR. ZEIGLER: I no longer would like to contest this case until it's before a jury.

THE COURT: This case isn't going before a jury. No one is entitled to a jury on a summary offense.

MR. ZEIGLER: It's a criminal matter, Your Honor.

THE COURT: Do you have any further questions?

MR. ZEIGLER: No.

N.T. Summary Appeal, 4/21/25, at 25-26.

The trial court found, and we agree, that the above line of questioning was irrelevant. *See* Trial Court Opinion, 8/21/25, at 4. Zeigler has not provided us with any reason to support his claim that Ostrander's oath goes to his bias and credibility. Furthermore, whether or not Ostrander took an oath does not change whether Zeigler committed criminal trespass while he was interrupting the school board meeting. We therefore find this issue is meritless.

Zeigler's entire final argument states:

The court's own record shows that I was warned for using "a vulgar word[."] Yet the Constitution protects substance, not decorum. The courtroom is not insulated from the right of the people to speak freely merely because the bench prefers civility over freedom. Rights unexercised in discomfort are rights already lost.

Appellant's Brief, at 14.

- 11 -

The Commonwealth notes that "[b]ecause [Zeigler] was not actually held in contempt of court, the Commonwealth is unsure of what relief he is attempting to attain." Appellee's Brief, at 29. We concur with the Commonwealth.

Zeigler was not held in contempt of court. The trial court warned him not to curse in the courtroom unless it was a direct quote used by another person during the school board meeting. *See* N.T. Summary Appeal, 4/21/25, at 32.

The Pennsylvania Supreme Court has consistently preserved the right of a judge to control the courtroom:

> Courts use contempt powers to maintain effective control of proceedings. In *Chambers v. NASCO*, 501 U.S. 32 [] (1991), the United States Supreme Court restated this traditional authority:
>
>> It has long been understood that certain implied powers must necessarily result to our Courts of justice from the nature of their institution, powers which cannot be dispensed with in a Court, because they are necessary to the exercise of all others. For this reason, Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates. These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.
>
> *Id.* at 43[.] This Court has long upheld a court's power to maintain courtroom authority.

*Behr v. Behr*, 695 A.2d 776, 778 (Pa. 1997).

Here, the trial court did not violate any of Zeigler's constitutional rights in seeking to maintain decorum in its courtroom. Therefore, Zeigler's final claim does not merit relief.

As none of Zeigler's issues hold merit, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

3/25/2026