J-S20043-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| PAUL BACORN | : | |
| | : | |
| Appellant | : | No. 821 WDA 2021 |

Appeal from the Judgment of Sentence Entered July 6, 2021
In the Court of Common Pleas of Mercer County
Criminal Division at No(s):  CP-43-CR-0002189-2019

BEFORE:  NICHOLS, J., MURRAY, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED: JANUARY 27, 2023**

Appellant, Paul Bacorn, appeals from the judgment of sentence entered in the Mercer County Court of Common Pleas, following his jury trial convictions for first-degree murder, conspiracy to commit murder, aggravated assault, conspiracy to commit aggravated assault, endangering the welfare of a child ("EWOC"), conspiracy to commit EWOC, and tampering with or fabricating physical evidence.[1]  We affirm.

In its opinion, the trial court accurately set forth the relevant facts and procedural history of this case as follows:

> On the morning of October 24, 2019 Mercer Pennsylvania State Police responded to a medical call for an unresponsive 14-year-old male.  A.J.G. Jr. ("victim") was found lying on a tarp on the floor and determined to be deceased by EMTs.

---

[1] 18 Pa.C.S.A. §§ 2502(a); 903; 2702(a)(1); 903; 4304; 903; and 4910, respectively.

The victim had dirty, wet hair; racoon eye bruising; sunken cheeks; was emaciated; and extensive bruising on the exposed part of his body. According to the autopsy report, the victim died as a result of "hypovolemic shock secondary to multi-focal severe soft tissue hemorrhage which developed as a consequence of blunt force trauma, in concert with severe malnutrition, complicated by peri-mortem aspiration." Both A.J.G. Sr. ("Co-Defendant") and Appellant were interviewed by Mercer Pennsylvania State Police Trooper Joseph Snyder.

During Co-Defendant's interview, he stated he had hosed the victim off as punishment before putting the victim in a "timeout" consisting of the victim standing in a corner with his arms above his head. [Co-defendant] further stated the victim had hit his head off a wall and outside off a cinder block. When asked about Appellant's involvement, he disclosed that on numerous occasions Appellant had witnessed the various extreme forms of punishment inflicted upon the victim, including those punishments inflicted on October 24, 2019. According to Co-Defendant, at no point did Appellant render any aid to the victim, even as the victim lay dying on October 24, 2019. Appellant was stated to have punished the victim as well, primarily by withholding meals from the victim.

During Appellant's interview, Appellant disclosed that he had known the Co-Defendant's family for many years, describing himself as a caretaker for the victim and his sister. His primary duties in this role were cooking for Co-Defendant's family and babysitting the victim and his sister. Not only did Appellant indicate awareness of the various extreme forms of punishment Co-Defendant inflicted on the victim, Appellant stated he would also punish the victim by depriving the victim of food and making the victim stand against the wall with his arms up for several hours. Appellant was also aware of the victim's unhealthy decrease in weight yet stated that the victim would be deprived of food for a period of up to three days at a time with Appellant neither stopping Co-Defendant from inflicting this form of punishment nor providing the victim with nourishment despite being the cook [for] Co-Defendant's family.

Appellant's jury trial commenced on May 11, 2021 and

- 2 -

ended May 14, 2021. After being found guilty on all counts, Appellant filed a post-verdict motion which was denied on May 25, 2021. Appellant was sentenced on July 6, 2021 [to life imprisonment for the murder conviction, and lesser sentences for some of the other crimes]. Appellant [timely] filed his Notice of Appeal of the sentence Order on July 13, 2021 and on August 11, 2021 filed [a] timely Statement of Errors Complained of on Appeal.

(Trial Court Opinion, filed 12/8/21, at 3-5) (internal citations omitted).

Appellant raises the following twelve issues for our review:

1. Whether the court erred as a matter of law or abused its discretion, when dismissing [Appellant's] petition for *habeas corpus* on the count of murder in the first degree when the Commonwealth did not meet a *prima facie* case for murder in the first degree.

2. Whether the court erred as a matter of law or abused its discretion, when dismissing [Appellant's] petition for *habeas corpus* on the count of conspiracy to commit murder in the first degree when the Commonwealth did not meet a *prima facie* case for conspiracy to commit murder in the first degree.

3. Whether the court erred as a matter of law or abused its discretion, when dismissing [Appellant's] petition for *habeas corpus* on the count of aggravated assault when the Commonwealth did not meet a *prima facie* case for aggravated assault.

4. Whether the court erred as a matter of law or abused its discretion, when dismissing [Appellant's] petition for *habeas corpus* on the count of conspiracy to commit aggravated assault when the Commonwealth did not meet a *prima facie* case for conspiracy to commit aggravated assault.

5. Whether the conviction of [Appellant] to murder in the first degree is in error since there was insufficient evidence to convict [Appellant] of murder in the first degree.

6. Whether the conviction of [Appellant] to conspiracy to commit murder in the first degree is in error since there was

insufficient evidence to convict [Appellant] of conspiracy to commit murder in the first degree.

7. Whether the conviction of [Appellant] to aggravated assault is in error since there was insufficient evidence to convict [Appellant] of aggravated assault.

8. Whether the conviction of [Appellant] to conspiracy to commit aggravated assault is in error since there was insufficient evidence to convict [Appellant] of conspiracy to commit aggravated assault.

9. Whether the trial court erred as a matter of law or abused its discretion, when determining that the defense expert's testimony on the reactions and actions of an abused child was not relevant, which prevented any counter to the Commonwealth's expert who testified to the same.

10. Whether the trial court erred as a matter of law or abused its discretion, when denying [Appellant's] motion for mistrial after a police officer testified on the Commonwealth's behalf that, "The clothes were obtained from the prison," which was in reference to a green stocking hat worn by [Appellant] that the jury would see in later video clips, and that this highly prejudiced the jury against [Appellant] since they then knew that [Appellant] was incarcerated and when this was brought up the Honorable Judge Yeatts said, "We're talking about Murder in the First Degree, so I'm sure that the jury already thinks he's in jail. It's harmless," even further while having this discussion the District Attorney accidentally had his microphone on for the entire courtroom to hear this objection.

11. Whether the court erred as a matter of law or abused its discretion, when the court failed to remedy the fact that, during Commonwealth Witness Adam Peth's testimony, neither the witnesses nor the jury's screens were working to view digital photographs.

12. Whether the court erred as a matter of law or abused its discretion, when the trial court read the jury instruction of duty of care before the charges of aggravated assault, conspiracy to commit aggravated assault, murder in the first degree and conspiracy to commit murder in the first degree

- 4 -

even though there is no element of duty of care to these offenses.

(Appellant's Brief at 8-11).

As a preliminary matter, we emphasize that "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." *Commonwealth v. Bradley*, 232 A.3d 747, 756 (Pa.Super. 2020) (internal citation omitted). Here, Appellant cites no law whatsoever in support of his ninth and eleventh issues on appeal. (*See* Appellant's Brief at 69-70, 72). Thus, we will not reach the merits of these claims and consider them waived on appeal. *See Bradley, supra*.

With respect to Appellant's issues five, six, seven, eight, ten, and twelve, after a thorough review of the record, the briefs of the parties, and the applicable law, we agree with the well-reasoned analysis set forth in the trial court's opinion. Specifically, concerning Appellant's issues five through eight, which challenge the sufficiency of the evidence to sustain his convictions for murder, aggravated assault, and conspiracy to commit murder and aggravated assault, the court evaluated those claims as follows. The Commonwealth presented evidence that there was no medical explanation for the victim's severe malnourishment other than food restriction. The victim's body mass index manifested in a loss of underlying soft tissue, muscle, and fat beneath the skin to the point of bone protrusion, which would not be seen in individuals with a proper food intake. Appellant acknowledged his role as

the primary cook for Co-Defendant's family and that he and Co-Defendant continually deprived the victim of food. The autopsy report revealed the cause of death as blunt force trauma in conjunction with severe malnutrition. Appellant failed to render aid to the victim, even when he was lying on the floor in obvious discomfort on the day of his death. Appellant also told the neighbor that the dog would eat before the victim would eat. On this record, the Commonwealth presented sufficient evidence of Appellant's deliberate treatment of the victim to establish the requisite specific intent to kill to sustain Appellant's first-degree murder conviction.

Regarding conspiracy to commit murder, the trial court noted that although Appellant and Co-Defendant's family resided in different trailers on the same property, Appellant had access to and casually moved about Co-Defendant's home.[2] Thus, the evidence refuted Appellant's attempt to minimize his interactions inside Co-Defendant's home. Further, Appellant used the word "we" when discussing how long he and Co-Defendant would deprive the victim of food. Appellant made other statements indicating he knew that he could face consequences for mistreating the victim. In sum, the evidence showed Appellant was an active participant with Co-Defendant in

_____

[2] Appellant's trailer did not have electric or running water, so Appellant and Co-Defendant ran an extension cord from Co-Defendant's trailer to Appellant's trailer. Appellant would prepare meals for Co-Defendant and Co-Defendant's children on the propane stove in Appellant's trailer and then take the food to Co-Defendant's trailer to eat. Appellant also used the restrooms and running water from Co-Defendant's trailer. (*See* N.T. Trial, 5/12/21, at 83-84).

their plan to withhold food from the victim as a form of punishment.

With respect to aggravated assault and conspiracy to commit same, the evidence showed that Appellant had boasted about punching the victim in addition to Appellant's statements about depriving the victim of food. Although Appellant acknowledged that the victim was severely underweight, Appellant still withheld food from the victim for up to three days at a time. To prevent the victim from stealing food, Appellant and the Co-Defendant kept a lock on the refrigerator and hid the key from the victim. This evidence established that Appellant and Co-Defendant caused serious bodily injury to the victim, resulting in the victim's death by starvation, and that Appellant did so intentionally, knowingly, or recklessly, manifesting extreme indifference to the value of human life. (**See** Trial Court Opinion at 11-19).[3]

Regarding Appellant's tenth issue challenging the court's denial of his motion for a mistrial after a Commonwealth witness testified that a stocking hat worn by Appellant (which the jury would see him wearing in later videos) was obtained from the prison, the court noted that Appellant did not immediately move for a mistrial based on the allegedly prejudicial comment.

---

[3] Based on our disposition of Appellant's issues five through eight challenging the sufficiency of the evidence to sustain Appellant's convictions, we need not address Appellant's issues one through four challenging the sufficiency of the evidence introduced at the preliminary hearing. **See Commonwealth v. Troop**, 571 A.2d 1084 (Pa.Super. 1990), *appeal denied*, 526 Pa. 634, 584 A.2d 317 (1990) (explaining that failure to establish *prima facie* case at preliminary hearing is immaterial where Commonwealth met its burden at trial by proving offense beyond reasonable doubt).

Thus, Appellant's claim is arguably waived. Moreover, the court explained that "[e]very unwise or irrelevant remark made in course of trial by a witness does not compel a new criminal trial." (*Id.* at 20). Here, the witness's passing improper remark would not have warranted a new trial even if the claim was properly preserved. Further, the court issued a cautionary instruction to the jurors to disregard any portion of the discussion that occurred while the microphones were still turned on. (*Id.* at 20-22).

With respect to Appellant's final issue challenging the court's jury instructions, the trial court explained that when "a person is placed in control and supervision of a child, that person has assumed such a status relationship to the child so as to impose a duty to act." (*Id.* at 24) (citing ***Commonwealth v. Kellam***, 719 A.2d 792 (Pa.Super. 1998), *appeal denied*, 559 Pa. 714, 740 A.2d 1145 (1999)). Appellant admitted that he was in the role of a caretaker to the victim as the victim's babysitter and the primary cook for the victim's family, cooking meals for the family 90% of the time. Thus, the court's jury instruction concerning a "status relationship" and "duty to act" was proper. (*Id.* at 23-25).[4]

_____

[4] We note that the court gave the challenged charge as a general charge about criminal liability and the duty to act where one stands in a certain status relationship to another (***see*** 18 Pa.C.S.A. § 301, requirement of voluntary act), prior to explaining the elements for each of the specific crimes charged. Contrary to Appellant's assertions, the court did not insert a duty element into the statutory language for first-degree murder, conspiracy, or aggravated assault. (***See*** N.T. Trial, 5/14/21, at 42-61). Further, we emphasize that "a
*(Footnote Continued Next Page)*

Therefore, Appellant's issues one through four merit no relief based on our disposition of Appellant's issues five through eight. We affirm Appellant's issues five through eight, ten, and twelve based on the sound analysis set forth in the trial court's opinion. Appellant's ninth and eleventh issues are waived. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/27/2023

---

jury charge must be read as a whole to determine if it is fair and complete" and that "an imperfect jury instruction does not trigger automatic reversal, so long as the balance of the instructions, taken as a whole, fairly and accurately convey the essential meaning." **Commonwealth v. Drummond**, 285 A.3d 625, 632-33 (Pa.Super. 2022) (internal citations omitted). Our review of the jury instructions, read as a whole, confirm the court accurately conveyed the law relevant to the charges at issue.

# IN THE COURT OF COMMON PLEAS OF MERCER COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF
PENNSYLVANIA,

v.

No. 2189 CR 2019

PAUL ALEXANDER BACORN,
Appellant

### 1925(a) OPINION

**YEATTS, P.J.,**

Appellant Paul Alexander Bacorn ("Appellant") has appealed to the Superior Court of Pennsylvania this Court's sentencing Order on July 6, 2021. This Court hereby enters the following opinion in accordance with Pa. R.C.P. 1925(a).

Appellant raises the following issues in their Statement of Errors Complained of on Appeal:

1. Whether the court erred as a matter of law or abused its discretion, when dismissing Appellant's petition for habeas corpus on the count of murder in the first degree when the Commonwealth did not meet a prima facie case for murder in the first degree.
2. Whether the court erred as a matter of law or abused its discretion, when dismissing Appellant's petition for habeas corpus on the count of conspiracy to commit murder in the first degree when the Commonwealth did not meet a prima facie case for conspiracy to commit murder in the first degree.
3. Whether the court erred as a matter of law or abused its discretion, when dismissing Appellant's petition for habeas corpus on the count of aggravated assault when the Commonwealth did not meet a prima facie case for aggravated assault.

1



4. Whether the court erred as a matter of law or abused its discretion, when dismissing Appellant's petition for habeas corpus on the count conspiracy to commit aggravated assault when the Commonwealth did not meet a prima facie case for conspiracy to commit aggravated assault.

5. Whether the conviction of Appellant to murder in the first degree is in error since there was insufficient evidence to convict Appellant of murder in the first degree.

6. Whether the conviction of Appellant to conspiracy to commit murder in the first degree is in error since there was insufficient evidence to convict Appellant of conspiracy to commit murder in the first degree.

7. Whether the conviction of Appellant to aggravated assault is in error since there was insufficient evidence to convict Appellant of aggravated assault.

8. Whether the conviction of Appellant to conspiracy to commit aggravated assault is in error since there was insufficient evidence to convict Appellant of conspiracy to commit aggravated assault.

9. Whether the trial court erred as a matter of law or abused its discretion, when determining that the defense expert's testimony on the reactions and actions of an abused child was not relevant, which prevented any counter to the Commonwealth's expert who testified to the same.

10. Whether the trial court erred as a matter of law or abused its discretion, when denying Appellant's motion for mistrial after a police officer testified on the Commonwealth's behalf that, "The clothes were obtained from the prison," which was in reference to a green stocking hat worn by Appellant that the jury would see in later video clips, and that this highly prejudiced the jury against Appellant since they then knew that Appellant was incarcerated and when this was brought up the Honorable Judge Yeatts said, "We're talking about murder in the first degree, so I'm sure the jury already thinks he's in jail. It's harmless," even further while having this discussion the District Attorney accidentally had his microphone on for the entire courtroom to hear this objection.

11. Whether the court erred as a matter of law or abused its discretion, when the court failed to remedy the fact that, during Commonwealth Witness Adam Peth's testimony, neither the witnesses nor the jury's screens were working to view digital photographs.

12. Whether the court erred as a matter of law or abused its discretion, when the trial court read the jury instruction of Duty of Care before the charges of Aggravated Assault, Conspiracy to Commit Aggravated Assault, Murder in the First Degree and Conspiracy to Commit Murder in the First Degree even though there is no element of Duty of Care to these offenses.

(*Appellant's Statement of Errors Complained of on Appeal*, filed August 11, 2021).

2

# I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On the morning of October 24, 2019 Mercer Pennsylvania State Police responded TO a medical call for an unresponsive 14-year-old male. A.J.G. Jr. ("victim") was found lying on a tarp on the floor and determined to be deceased by EMTs. Notes of Testimony, Preliminary Hearing, December 11, 2019, pp. 5-6, admitted as Commonwealth's Exhibit 1-A. The victim had dirty, wet hair; racoon eye bruising; sunken cheeks; was emaciated; and extensive bruising on the exposed part of his body. **Id.** at 9. According to the autopsy report, the victim died as a result of "hypovolemic shock secondary to multi-focal severe soft tissue hemorrhage which developed as a consequence of blunt force trauma, in concert with severe malnutrition, complicated by peri-mortem aspiration." **See** Autopsy Report of Dr. Eric Vey, admitted as Commonwealth's Exhibit 1-B. Both A.J.G. Sr. ("Co-Defendant") and Appellant were interviewed by Mercer Pennsylvania State Police Trooper Joseph Snyder. Notes of Testimony, Preliminary Hearing, December 11, 2019, pp. 12-13, admitted as Commonwealth's Exhibit 1-A.

During Co-Defendant's interview, he stated he had hosed the victim off as punishment before putting the victim in a "timeout" consisting of the victim standing in a corner with his arms above his head. **Id.** further stated the victim had hit his head off a wall and outside off a cinder block. **Id.** at 13-14. When asked about Appellant's involvement, he disclosed that on numerous occasions Appellant had witnessed the various extreme forms of punishment inflicted upon the victim, including those

3

punishments inflicted on October 24, 2019. Written Colloquy of Co-Defendant, docket no. 2188 Criminal 2019, admitted as Commonwealth's Exhibit 1-C. According to Co-Defendant, at no point did Appellant render any aid to the victim, even as the victim lay dying on October 24, 2019. **Id.** Appellant was stated to have punished the victim as well, primarily by withholding meals from the victim. **Id.**

During Appellant's interview, Appellant disclosed that he had known the Co-Defendant's family for many years, describing himself as a caretaker for the victim and his sister. Notes of Testimony, Preliminary Hearing, December 11, 2019, pp. 19-20, admitted as Commonwealth's Exhibit 1-A. His primary duties in this role were cooking for Co-Defendant's family and babysitting the victim and his sister. **Id.** Not only did Appellant indicate awareness of the various extreme forms of punishment Co-Defendant inflicted on the victim, Appellant stated he would also punish the victim by depriving the victim of food and making the victim stand against the wall with his arms up for several hours. **Id.** at 36. Appellant was also aware of the victim's unhealthy decrease in weight yet stated that the victim would be deprived of food for a period of up to three days at a time with Appellant neither stopping Co-Defendant from inflicting this form of punishment nor providing the victim with nourishment despite being the cook Co-Defendant's family. **Id.** at 37.

Appellant's jury trial commenced on May 11, 2021 and ended May 14, 2021. After being found guilty on all counts, Appellant filed a post-verdict motion which was

4

denied on May 25, 2021. Appellant was sentenced on July 6, 2021. Appellant filed his Notice of Appeal of the sentence Order on July 13, 2021 and on August 11, 2021 filed timely Statement of Errors Complained of on Appeal.

## II. ANALYSIS

**THE COMMONWEALTH HAS ESTABLISHED A PRIMA FACIE CASE FOR MURDER IN THE FIRST DEGREE, CRIMINAL CONSPIRACY TO COMMIT MURDER IN THE FIRST DEGREE, AGGRAVATED ASSAULT, AND CRIMINAL CONSPIRACY TO COMMIT AGGRAVATED ASSAULT.**

The first four of Appellant's Statement of Errors Complained of on Appeal concern the denial of Appellant's pretrial habeas corpus motion regarding the charges of Murder in the First Degree, 18 Pa. C.S.A. § 2502(a); Criminal Conspiracy to Commit Murder of the First Degree, 18 Pa. C.S.A. §§ 903(a)(1), (2), and 2502(a); Aggravated Assault, 18 Pa. C.S.A. § 2702(a)(1); and Criminal Conspiracy to Commit Aggravated Assault, 18 Pa. C.S.A. §§ 903(a)(1), (2), and 2702(a)(1).

A pre-trial habeas corpus motion is the proper means for testing whether the Commonwealth has sufficient evidence to establish a prima facie case. **Commonwealth v. Dantzler**, 135 A.3d 1109, 1112 (Pa.Super. 2016). To demonstrate that a prima facie case exists, the Commonwealth must produce evidence of every material element of the charged offense, and the defendant's complicity therein. **Id.** The Commonwealth may utilize the evidence presented at the preliminary hearing and may submit additional proof. **Commonwealth v. Landis**, 48 A.3d 432, 444 (Pa.Super. 2012). The evidence

5

presented as well as all reasonable inferences therefrom are viewed in the light most favorable to the Commonwealth. **Id.**

In lieu of testimony the Commonwealth presented a number of documents at Appellant's Habeas Corpus motion hearing. These documents include: 1) the preliminary hearing transcript; 2) the victim's autopsy report; 3) the written and signed colloquy of the victim's father, Co-Defendant; 4) the guilty plea/sentencing transcript of A.J.G. Sr. ("Co-Defendant") from docket number 2188 Criminal 2019; 5) audio and video recordings of the interview of Appellant conducted by Pennsylvania State Police on October 24, 2019; 6) a transcript of said interview; 7) a photograph of the victim taken about two weeks before the victim's death from Co-Defendant's cellphone; and 8) a photograph of the cellphone log of Co-Defendant's cellphone indicating when the photograph of the victim was sent.

Murder in the First Degree

To prove first-degree murder, the Commonwealth must establish that: 1) a human being was unlawfully killed; 2) the accused caused the death; and 3) the accused acted with the specific intent to kill. 18 Pa.C.S.A. § 2502(a), (d). The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. **Commonwealth v. Fitzpatrick**, 159 A.3d 562, 568 (Pa.Super. 2017) cert. denied 173 A.3d 255 (Pa. 2017).

Both the Commonwealth and Appellant agree that Commonwealth's introduction of Co-Defendant's Guilty Plea Colloquy established that the victim had

6

been unlawfully killed. **See** Notes of Testimony, Guilty Plea and State Sentence, April 24, 2020, admitted as Commonwealth's Exhibit 1-D. However, Appellant contends that the Commonwealth cannot establish a prima facie case for murder in the first degree because the Commonwealth will be unable to establish Appellant caused the death or that Appellant acted with the specific intent to kill the victim. Specifically, Appellant contends Co-Defendant solely inflicted the blunt force trauma upon the victim the morning of October 24, 2019, killing the victim.

At the time the victim was determined to be deceased by EMTs, the victim was observed to be emaciated with sunken cheeks. See Notes of Testimony, Preliminary Hearing, December 11, 2019, p. 9, admitted as Commonwealth's Exhibit 1-A. According to Dr. Eric Vey's subsequent autopsy report, the victim's cause of death was "hypovolemic shock secondary to multi-focal severe soft tissue hemorrhage which developed as a consequence of blunt force trauma **in concert with** severe malnutrition, complicated by peri-mortem aspiration." **See** Autopsy Report of Dr. Eric Vey, admitted as Commonwealth's Exhibit 1-B, pp. 58-59 (emphasis added).

As the evidence presented by the Commonwealth indicates, Appellant had known the victim's family for many years and was a caretaker to the victim. Notes of Testimony, Preliminary Hearing, December 11, 2019, pp. 19-20. Through Appellant's own statements the Commonwealth can establish Appellant frequently babysat the victim and his sister and was the primary cook for the victim's family. **Id.** at 36. According to Appellant the longest the victim was deprived of food was three days. **Id.**

7

at 37. By his own admission, Appellant had taken responsibility of preparing meals for the victim who ultimately died, in part, from malnutrition. Therefore, the Commonwealth can establish the victim was unlawfully killed, and Appellant caused the death.

The final element the Commonwealth must establish is the specific intent to kill. An intentional killing is a killing by means of poison, or by lying in wait, or any other kind of willful, deliberate, and premeditated killing. 18 Pa. C.S.A. § 2502(d). When there is no direct evidence of intent to kill, the factfinder may glean the necessary intent from the act itself and from all surrounding circumstances. **Commonwealth v. Fitzpatrick**, 159 A.3d 562, 568 (Pa.Super. 2017) cert. denied 173 A.3d 255 (Pa. 2017).

Despite Appellant's awareness of the victim's unhealthy decrease in weight, Appellant did not stop Co-Defendant from inflicting various forms of extreme punishment on the victim, did not render any assistance to the victim at any point, and continually deprived the victim of proper nutrients though he was responsible for providing meals for the victim and his family. **See** Notes of Testimony, Preliminary Hearing, December 11, 2019, p. 37. Thus, the Commonwealth can establish that a human being was unlawfully killed, Appellant caused the victim's death, and Appellant acted maliciously and with the specific intent of causing the victim's death in order to withstand a habeas corpus challenge to the charge of Murder in the First Degree.

8

<u>Criminal Conspiracy to Commit Murder in the First Degree</u>

To prove conspiracy, the Commonwealth must prove that: 1) the defendant intended to commit or aid in the commission a criminal act; 2) the defendant entered into an agreement with another to engage in the crime; and 3) the defendant or one or more of the other co-conspirators committed an overt act in furtherance of the agreed upon crime. **Commonwealth v. Montalvo**, 956 A.2d 926, 932 (Pa. 2008). Existence of a conspiracy may be inferred from evidence of related facts and circumstances from which it appears as a reasonable and logical inference that activities of participants could not have been carried on except as a result of a preconceived scheme or common understanding. **United States of America v. Brodie**, 403 F.3d 123, 134 (3rd Cir. 2004).

Through the introduction of Co-defendant's guilty plea colloquy, the Commonwealth can establish Co-Defendant instructed Appellant to deprive the victim of food. Written Colloquy of Co-Defendant, docket no. 2188 Criminal 2019, admitted as Commonwealth's Exhibit 1-C. Appellant's own statements indicate he was complicit with Co-Defendant's instruction by assisting Co-Defendant in restricting the victim's access to the food in the family's refrigerator and depriving the victim of meals. **See** Notes of Testimony, Preliminary Hearing, December 11, 2019, pp. 36-37. By depriving the victim of food Appellant also committed an overt act in furtherance of the agreement to restrict the victim's food intake between himself and Co-Defendant. **Id.** Therefore, the Commonwealth has introduced evidence of each material element of criminal conspiracy to establish a prima facie case.

9

Aggravated Assault

A person is guilty of aggravated assault if he attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life. 18 Pa.C.S.A. § 2702(a)(1). Evidence of the use of force or the threat of force is not an element of the crime of aggravated assault. 18 Pa.C.S.A. § 2702(a)(1).The prima facie standard does not require the Commonwealth to prove the elements of the crime beyond a reasonable doubt. **Commonwealth v. Barnes**, 14 A.3d 128, 130 (Pa. 2011). Appellant contends that the cause of death of the victim was solely blunt force trauma and that there is no evidence Appellant caused any blunt force trauma to the victim. **See** Defendant's Brief in Support of Petition of Habeas Corpus, filed August 25, 2020, p. 5. Appellant asserts he never struck or touched the child. **Id.**

In addition to the evidence discussed in previous sections, the Commonwealth also introduced the preliminary hearing testimony of Appellant's former neighbor who testified Appellant told him, the dog would eat before that kid [victim]." **See** Notes of Testimony, Preliminary Hearing, December 11, 2019, pp. 46-47. He also testified Appellant had boasted about punching the victim. **Id.** This evidence, along with the evidence from previous sections incorporated into this discussion, establishes that Appellant caused serious bodily injury to the victim, resulting in the victim's death by starvation and Appellant did so intentionally, knowingly, or recklessly, manifesting extreme indifference to the value of human life.

10

<u>Criminal Conspiracy to Commit Aggravated Assault</u>

Appellant asserts that there is no evidence that the Appellant was part of a conspiracy to cause serious bodily injury. Appellant argues that there is no evidence that Appellant dressed, bathed, or fed the victim. Appellant states that he merely brought the food to Co-Defendant's family home and was never charged with caring for the victim because the victim was 14 years of age the victim did not require supervision or care.

However, the Commonwealth has already established statements by Appellant that he acted as a caretaker for the victim by cooking for and babysitting the victim. The Commonwealth also established that Appellant, again by his own admission, Appellant deliberately deprived the victim of food at the direction of Co-Defendant.

Additionally, Appellant indicated that both he and Co-Defendant actively kept a bicycle lock on the refrigerator to keep the victim out with only Appellant and Co-Defendant having the only keys. **Id.** at 36. Appellant stated that he "was very disciplined and did not ever lose his key to the lock." **Id.** Therefore, the Commonwealth can establish that Appellant actively participated in preventing the victim from having access to nourishment, and knowingly causing substantial bodily injury to the victim.

**THERE IS SUFFICIENTLY SUPPORTS THE CONVICTIONS OF MURDER IN THE FIRST DEGREE, CRIMINAL CONSPIRACY TO COMMIT MURDER IN THE FIRST DEGREE, AGGRAVATED ASSAULT, AND CRIMINAL CONSPIRACY TO COMMIT AGGRAVATED ASSAULT.**

The next four issues (5-8) of Appellant's Statement of Errors Complained of on Appeal concern the sufficiency of the evidence for Appellant's convictions of Murder

11

in the First Degree, 18 Pa. C.S.A. § 2502(a); Criminal Conspiracy to Commit Murder of the First Degree, 18 Pa. C.S.A. §§ 903(a)(1), (2), and 2502(a); Aggravated Assault, 18 Pa. C.S.A. § 2702(a)(1); and Criminal Conspiracy to Commit Aggravated Assault, 18 Pa. C.S.A. §§ 903(a)(1), (2), and 2702(a)(1).

A sufficiency of the evidence claim requires an assessment of whether the evidence introduced at trial established the offense charged. **Commonwealth v. Sanchez**, 36 A.3d 24 (Pa. 2011). In reviewing a sufficiency of the evidence claim, an appellate court must determine whether the evidence and all reasonable inferences deductible therefrom, when viewed in the light most favorable to the verdict-winner are sufficient to establish all elements of the crime charged beyond a reasonable doubt. **Commonwealth v. Murray**, 83 A.3d 137 (Pa. 2013). Evidence will be deemed sufficient to support a verdict when it establishes each material element of the crime charged and the commission thereof by the accused beyond a reasonable doubt.

Murder in the First Degree

To convict a defendant of first-degree murder, the jury must find: 1) a human being was unlawfully killed; 2) the defendant is responsible for the killing; and 3) the defendant acted with the specific intent to kill. 18 Pa. C.S.A. § 2502(a). The Commonwealth may sustain its burden to prove the elements of the offense beyond a reasonable doubt by means of wholly circumstantial evidence. **Commonwealth v. Montalvo**, 956 A.2d 926, 932 (Pa. 2008). Appellant contends that there was no direct

12

or indirect evidence to indicate Appellant either caused the death of the victim or had the specific intent to do so required for a conviction of murder in the first degree. The Commonwealth argues specific intent can be inferred by words, actions, or attendant circumstances, and that witness testimony demonstrates that ninety percent of the cooking is done by Appellant in a house well stocked with food. Further, the evidence establishes the victim died as a result of physical abuse, hypovolemic shock occurring because of said physical abuse and starvation which can properly be brought before a jury.

Neither expert who was called to testify found any medical explanation for the victim's severe malnourishment other than food restriction. At numerous points in his testimony, Dr. Eric Vey ("Dr. Vey") noted the victim's acute malnutrition and malnourishment. According to Dr. Vey, the average body mass index for a fourteen-year-old male five (5) foot, ten (10) inches tall is nineteen point two (19.2). Notes of Testimony, Trial of Paul Alexander Bacorn, Day 3 of 4, May 13, 2021, p. 31:13-14. At the time of his death, the victim's height, and weight of ninety-eight (98) pounds put his body mass index at thirteen point eight (13.8), well below the average. **Id.** 32:1-4. The victim's body mass index manifested in a loss of underlying soft tissue, muscle, and fat beneath the skin to the point of bone protrusion, not seen in individuals with a proper food intake. **Id.** 45:7-10. Dr. Vey noted bone protrusion in the victim's shoulder

13

blades[1], collarbone[2], right[3] and left[4] humerus bones, ribs[5], pelvic bone[6], and femur bone[7].

Dr. Karen Morris ("Dr. Morris") further attributed the victim's below average body mass index to food restriction, testifying,

> ...I think he was 68 inches when he was in Southwood and at the time of death he was 70 inches. So he was gaining height. And a child who has a metabolic problem, like cancer or an endocrine problem like thyroid disease, or some other medical problem, will not gain height because of their energy's going to fighting that disease. So it doesn't make sense that he's using too many calories or having diarrhea or vomiting. So the only thing that would fit with his weight loss that proceeded and continued until the time of his death was that he wasn't getting enough calories in.

**Id.** 102:10-22. Dr. Morris further testified that a person with a body mass index ranging from sixteen (16) to fourteen (14), higher than the victim's, would be admitted into a hospital for fear the person could die at any minute from a heart attack or some other cause given their body could not support itself at that low of a body mass index. **Id.** 112:5-10.

Appellant, by his own words, acknowledged his role as the primary cook for Co-Defendant's family and that he, as well as Co-Defendant, continually deprived the

---

[1] **Id.** at 55:5-9.
[2] **Id.** at 58:12-13.
[3] **Id.** at 51:1-2.
[4] **Id.** at 58:9-11.
[5] **Id.** at 51:3-4 and 57:17-19.
[6] **Id.** at 45:4-6, 51:5, and 57:17-19.
[7] **Id.** at 45:4-6.

14

victim of food, stating, "We got him food by the third day." **Id.** at 128:14-17. The autopsy report indicates blunt force trauma in conjunction with severe malnutrition was the victim's cause of death and allows for the inference that Appellant played a substantial role in the victim's death even if he did not inflict the physical blow that contributed to the victim's death.

The phrase "specific intent to kill" is a term of art used by Pennsylvania courts to describe the state of mind that must necessarily accompany a killing in order for it to be "willful, deliberate, and premeditated" murder of the first degree under 18 Pa. C.S.A. § 2502(a) and (d). A murder is willful, deliberate, and premeditated if it is committed by one who is conscious of his own purpose and intends to end the life of his victim. **Commonwealth v. Jordan**, 65 A.3d 318, 323 (Pa.Super. 2013) cert. denied, 188 L.Ed.2d 311 (Pa. 2014). Evidence that the defendant purposely denied daughter proper nourishment and directed others to do the same and going so far as to physically restrain the daughter so she would be unable to feed herself, and defendant continued the deliberate mistreatment of her daughter despite obvious physical indications that daughter despite obvious physical malnourished sufficiently established the defendant's intent to kill her seven-year-old daughter. **Commonwealth v. Tharp**, 830 A.2d 519 (Pa. 2003).

Evidence presented at trial included multiple photographs showing the magnitude of the victim's malnourishment even a few weeks prior to his death.

15

Photographs of Victim, admitted as Commonwealth's Exhibits 376-411. At no point did Appellant render assistance to the victim, even as the victim lay on the floor in obvious discomfort on the day of his death. Notes of Testimony, Trial of Paul Alexander Bacorn, Day 3 of 4, May 13, 2021, p. 129:3-5. Further, despite the victim's obviously failing health the date of his death, video recordings admitted into evidence show multiple instances of Appellant stepping over the victim to move through the different rooms of the house showing considerable callousness towards the victim. **Id.** at 128: 20-25 and 129:1-5. A former neighbor testified Appellant had once told him, "the dog will eat before that kid eats." Notes of Testimony, Scott Warman, Trial of Paul Alexander Bacorn, Day 2 of 4, May 12, 2021, p. 50:12-13. These separate instances demonstrating Appellant's coldness towards the victim demonstrates deliberateness in Appellant's treatment of the victim sufficient to establish the requisite specific intent to kill.

Criminal Conspiracy to Commit Murder in the First Degree

To prove conspiracy, the trier of fact must find: 1) the defendant intended to commit or aid in the commission of the criminal act; 2) defendant entered into an agreement with another to engage in the crime; and 3) the defendant or a coconspirator committed an overt act in furtherance of the agreed upon crime. In essence, the Commonwealth must show the defendant was an active participant in the criminal enterprise. **Commonwealth v. Darcy**, 650 A.2d 448, 452 (Pa.Super. 1994). Appellant argues he lived on the same property as Co-Defendant's family, but that he lived separately from the family and this assertion is supported through evidence presented at

16

trial. Appellant further argues he had limited interactions with the victim merely brought food to Co-Defendant's family home.

However, video evidence showed Appellant casually moving about Co-Defendant's home, even walking in and out of the bedroom numerous times, as if it was something he did often and there was nothing unusual about this behavior. Notes of Testimony, Trial of Paul Alexander Bacorn, Day 3 of 4, May 13, 2021, p. 128:24-25 and 129:1. In addition to Appellant's use of the word "we" when talking about how long the victim would be deprived of food at one time, Appellant, made other statements indicating he knew that he could face consequences for mistreating the victim. **Id.** at 128:14-17. Appellant, in his interview with police, changed his portrayal of events numerous times, frequently trying to minimize his involvement in the interactions between the victim and his father or pushing all blame on Co-Defendant. **Id.** at 129:5-10. The multitude of inconsistent portrayals allow for the inference Appellant was more involved in the mistreatment of the victim than he was saying and knew he would face the consequences for that mistreatment like Co-Defendant and thus indicates a reasonable inference Appellant was an active participant in the criminal conspiracy resulting in the death of the victim. **Id.**

Aggravated Assault and Criminal Conspiracy to Commit Aggravated Assault

A person is guilty of aggravated assault if he attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life. 18

17

Pa.C.S.A. § 2702(a)(1). Evidence of the use of force or the threat of force is not an element of the crime of aggravated assault. 18 Pa.C.S.A. § 2702(a)(1).

Appellant contends that the cause of death of the victim was solely blunt force trauma and that there is no evidence Appellant caused any blunt force trauma to the victim. Appellant asserts he never struck or touched the child. However, the Commonwealth also introduced testimony from a former neighbor of Defendant's that Defendant had boasted about punching the victim in addition to his statements about depriving the victim of food, "the dog would eat before that kid eats." Notes of Testimony, Scott Warman, Trial of Paul Alexander Bacorn, Day 2 of 4, May 12, 2021, p. 50:12-13

Defendant acknowledged a number of times that the victim was severely underweight. **See** Transcript of Paul Bacorn, admitted as Commonwealth's Exhibit 5, pp. 4:14-15, 8:29-32, 18:72, 19:73-74, 36:141, 55:219, 73:290. However, despite the victim's needing "to be fattened up" Defendant stated the victim would still be deprived of food for up to three days at a time. Notes of Testimony, Trooper Robert Rottman, Trial of Paul Alexander Bacorn, Day 2 of 4, May 12, 2021 p. 91:3-4. Defendant further indicated the victim would be deprived of food as a punishment for stealing food from the refrigerator. **Id.** at 87:20-21. To prevent the victim from being able to steal food, Appellant and Co-Defendant kept a bicycle lock on the refrigerator with only Appellant and Co-Defendant having keys to the lock. **Id.** at 88. This evidence, along with the

18

previously mentioned evidence establishes that Appellant caused serious bodily injury to the victim, resulting in the victim's death by starvation and Defendant did so intentionally, knowingly, or recklessly, manifesting extreme indifference to the value of human life.

**TESTIMONY OF APPELLANT'S EXPERT AS IRRELEVANT.**

In Statement of the Errors Complained of on Appeal issue nine (9), Appellant asserts the Court erred in determining defense expert's testimony on the reactions and actions of an abused child was not relevant and prevented any counter to the Commonwealth's expert who testified to the same. However, Commonwealth's witness was qualified as an expert "in the area of pediatrics and child abuse." Notes of Testimony, Trial of Paul Alexander Bacorn, Day 3 of 4, May 13, 2021, p. 94:13-15. The expert witness' testimony centered on the victim's medical records and growth patterns, not the victim's actions or reactions or those of abused children in general. **Id.** at 98:8-19. As such, there was no testimony for a defense expert to refute.

The Pennsylvania Rules of Evidence govern the test for relevant evidence. Rule 401 provides: "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401. This Court held a **Frye**[8] hearing on the issue and ordered briefs be submitted. See Notes of Testimony, Frye Hearing, January 20, 2021, p. 42:16-22. During this hearing, defense counsel had multiple opportunities to

---

[8] **Frye v. United States**, 293 F. 1013 (D.C. Cir. 1923).

19

show this Court how defense expert's testimony was relevant to Appellant's case and did not do so. **Id.** at 41:24-25 and 42:1-2. Further, defense counsel failed to submit any written argument in support of his position on either a **Frye** matter or relevance. Based on the testimony given at the Frye hearing and the lack of written argument by defense counsel, this Court properly excluded the defense expert's testimony.

**THIS COURT DID NOT ERR IN DENYING APPELLANT'S MOTION FOR A MISTRIAL BECAUSE OF TESTIMONY BY A POLICE OFFICER ALLUDED TO APPELLANT'S INCARCERATION.**

In Appellant's Statement of Errors Complained of on Appeal number ten (10), Appellant asserts that the Court abused its discretion when denying Appellant's motion for mistrial after a Commonwealth witness testified that a stocking hat worn by Appellant, which the jury would see him wearing in later videos, was obtained from the prison. If a defendant fails to move for a mistrial when an event occurs which is prejudicial to the defendant, the defendant waives any right to assert on appeal that the trial court erred in failing to grant a mistrial. **Commonwealth v. Tucker**, 143 A.3d 955, 961 (Pa.Super. 2016) cert denied 165 A.3d 895 (Pa. 2017). Every unwise or irrelevant remark made in course of trial by a witness does not compel a new criminal trial. **Commonwealth v. Frank**, 398 A.2d 663, 674 (Pa. 1979) and see **Commonwealth v. Davis**, 454 A.2d 595 (Pa.Super. 1982) (Reference to incarceration based on the present charges was cured of error and any possible prejudice by trial court's cautionary instruction). In this case, the testimony in question is as follows:

Q. And 365, did you receive certain clothing and document it?

20

A. Yes, sir.
Q. But you don't know who was whose?
A. No, sir. Those items were obtained from the prison prior to being entered into evidence.

Notes of Testimony, Trial of Paul Alexander Bacom, Day 1 of 4, May 11, 2021, p. 159:15-20. Defense counsel objected immediately; however, defense counsel did not specifically move for a mistrial at this time. **Id.** at 159:25. Counsel for the parties were taken to sidebar, though the microphone of the attorney for the Commonwealth remained on and allowed the jury to hear the following statements:

Attorney: If I just heard that right, they just mentioned that they got that from the prison.
The Court: Well, the officer, not "they" said that he got clothing—

**Id.** at 160:8-12. At no other point did defense counsel move for a mistrial, even stating on record, "I don't think it is something for a mistrial... ." **Id.** 160:22-23. When defense counsel requested the Court make a curative instruction, counsel requested only that the Court instruct the jury to disregard the statements the jury heard before the microphone was turned off, not regarding the witness's statements. **Id.** at 162:24-25 and 163:1-1-8. The Court subsequently issued the requested curative instruction to disregard anything the jury might have heard that was said in the back. **Id.** at 163:22-25 and 164:1-3. This Court then recessed the jury in order to caution the witness, "not say or make any reference that a jury could infer the [Appellant] wasn't in prison or was in prison." **Id.** at 165:1-3. Further, this item of clothing did not go back with the jury

21

during deliberations. **Id.** at 170:19-21. Even if defense counsel had properly moved for a mistrial after the witness's testimony concerning the hat, a mistrial would not have been warranted.

## TECHNOLOGICAL ISSUES DURING WITNESS'S TESTIMONY DID NOT RESULT IN PREJUDICE TO APPELLANT.

In his statement of errors complained of on appeal number eleven (11), Appellant erred when this Court failed to remedy both the witness and the jurors being unable to view digital photographs on their respective screens.

The failure to make a timely and specific objection before the trial court at the appropriate stage of the proceedings will result in waiver of the issue. **Commonwealth v. Tucker**, 143 A.3d 955, 961 (Pa.Super. 2016) cert denied 165 A.3d 895 (Pa. 2017).

Defense counsel did not move for a mistrial. Rather, the issue with the witness's and jury's screens was not brought to the Court's attention during a recess between the conclusion of the redirect examination before recross examination by defense counsel. Notes of Testimony, Trial of Paul Alexander Bacorn, Day 1 of 4, May 11, 2021, p. 145:19-20. Both the witness and jurors were still able to view the exhibits on another working screen during the witness's testimony and the issue with their respective screens was promptly fixed once the Court was made aware. **Id.** Both the jurors and witness were advised to raise their hands to bring it to the Court's attention to be remedied if any further issue occurred. **Id.** 145:19-21. Both the witnesses and jurors were able to view these photographs during trial on a central screen. **Id.** at 145:18-19.

22

For the duration of the trial, the Court was cognizant to ensure the screens remained in working order for the jurors and witnesses without further incident. Additionally, defense counsel was given an opportunity to request these photographs be sent back with the jury during deliberation, and a number of these photographs were sent back with the jury.[9] Notes of Testimony, Trial of Paul Alexander Bacorn, Day 4 of 4, May 14, 2021, p. 77-78. In light of defense counsels' failure to move for a mistrial and the corrective measures taken to remedy technological issues during the trial, this Court neither erred as a matter of law nor abused its discretion.

**THIS COURT DID NOT ERR IN ITS CHARGE TO THE JURY.**

Appellant's last issue of his Statement of Errors Complained of on Appeal concerns the instructions given to the jury. Appellant contends the Court abused its discretion when it instructed the jury on duty of care before the charges of Murder in the First Degree, Criminal Conspiracy to Commit Murder in the First Degree, Aggravated Assault, and Criminal Conspiracy to Commit Aggravated Assault since there is no duty of care to those offenses.

When reviewing a challenge to a jury instruction, the appellate court reviews the charge in context as a whole to ensure it was a fair and complete statement of the law.

---

[9] Commonwealth's Exhibit 304, a picture of the opened refrigerator; Commonwealth's Exhibit 305, a picture of the porch and the bike lock; Commonwealth's Exhibit 294, a picture of the sports camera; Commonwealth's Exhibit 368, a photograph of the victim with a lacrosse racket; Commonwealth's Exhibit 368, a picture of the victim on World Read Aloud Day; and Commonwealth's Exhibit 375, a picture of the victim retrieved from Richard Jackson's phone were sent back with the jury. **Id.** at 77:23-25 and 78:1-3

23

**Commonwealth v. Johnson**, 107 A.3d 52 (Pa. 2014). The sole requirement is that jury instructions properly and adequately assess the law. **Id.** Criminal liability may be based on either an affirmative act or a failure to perform a duty imposed by law. 18 Pa.C.S.A. § 301. The failure to act may constitute the breach of a legal duty 1) where expressly provided by statute, 2) where one stands in a certain status relationship to another... ."

**Commonwealth v. Pestinikas**, 617 A.2d 1339, 1343 (Pa.Super. 1992) (en banc). Whenever a person is placed in control and supervision of a child, that person has assumed such a status relationship to the child so as to impose a duty to act.

**Commonwealth v. Kellam**, 719 A.2d 792 (Pa.Super. 1998).

The portion of the charge in question was given at the beginning of this Court's charge to the jury where it informed the jury of the different criminal liability theories the Commonwealth had advanced during trial and is as follows:

> I first want to give you a general charge about criminal liability. Criminal liability may be based on either an affirmative act or a failure to perform a duty imposed by law. The failure to act may constitute the breach of a legal duty where expressly provided by statute or where one stands in a certain status relationship to another.
>
> Status relationship means more than parent to child. Whenever a person is placed in control and supervision of a child, that person has assumed such a status relationship to the child so as to impose a duty to act. A person responsible for a child's welfare includes a person who provides permanent or temporary care, supervision or control of a child in lieu of parental care, supervision, and control. By giving this instruction, I am not suggesting that the defendant was in such a status relationship.

24

Notes of Testimony, Trial of Paul Alexander Bacorn, Day 4 of 4, May 14, 2021, p. 42:16-25 and 43:1-6.

The Commonwealth played audio from Appellant's Pennsylvania State Police interview where Appellant states at numerous points he would babysit the victim and his sister and was the primary cook for the victim's family, cooking meals for the family ninety percent (90%) of the time. **See** Transcript of Paul Bacorn, admitted as Commonwealth's Exhibit 5, pp. 13:52, 32:125, 34:133-134, 45:179, 69:274 (Appellant as caretaker to victim and victim's sister) and pp. 5:20, 16:62, 37:145-146 (Appellant being a cook for victim and victim's family). Since Appellant voluntarily assumed parental responsibilities with regard to the victim, the above instruction accurately stated the law of this Commonwealth to the jury. See **Commonwealth v. Kellam**, 719 A.2d 792 (Pa.Super. 1998) ("In this age where children reside in increasingly complex family situations, we fail understand why criminal liability should be strictly limited to biological or adoptive parents.")

### III. CONCLUSION

For the reasons above, Appellant is not entitled to relief upon his claims. Accordingly, the Superior Court should deny Appellant's appeal.

BY THE COURT,

_____, P.J.

Robert G. Yeatts, President Judge

25