J-S29029-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

<table>
<tr><td>COMMONWEALTH OF PENNSYLVANIA</td><td>:</td><td>IN THE SUPERIOR COURT OF<br>PENNSYLVANIA</td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>v.</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>JOHN DAVID WILSON</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>Appellant</td><td>:</td><td>No. 1199 WDA 2024</td></tr>
</table>

Appeal from the PCRA Order Entered September 9, 2024
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0002430-2022

BEFORE: NICHOLS, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY SULLIVAN, J.: **FILED: December 9, 2025**

John David Wilson ("Wilson") appeals from the order dismissing without a hearing his first petition filed pursuant to the Post Conviction Relief Act.[1] Because Wilson has failed to show counsel was ineffective in connection with his guilty plea to, *inter alia*, persons not to possess a firearm stemming from his prior disqualifying conviction for murder, he is due no relief. Consequently, we affirm the order dismissing his petition.

We set forth the following factual and procedural history. In March 2022, officers were on patrol in Allegheny County at around 1 a.m. when they observed a dark sedan passing with a license plate light out, rendering the plate non-visible. Officers conducted a traffic stop, during which they observed Wilson seated in the front passenger seat with his legs close

---

[1] *See* 42 Pa.C.S.A. §§ 9541–9546.

together, and, after officers obtained consent to search the vehicle, they discovered a Colt .45 handgun on the front passenger floorboard. *See* N.T., 6/20/23, at 5-6.

Officers later sent the firearm to a lab which showed it was operable and also had Wilson's fingerprint on it. *See id*. at 6. Additionally, there is, and was, no dispute that Wilson was previously convicted for third-degree murder and did not have a valid concealed carry permit. *See id*. at 6-7.

The Commonwealth charged Wilson with several offenses including, in relevant part, persons not to possess a firearm. *See* Information, 4/28/22 (charging Wilson with violation, *inter alia*, 18 Pa.C.S.A. § 6105(a)(1), a first-degree felony). Wilson moved for suppression, which the trial court denied, and he thereafter entered his guilty plea.[2] He was orally colloquied and also filled out a written colloquy. *See generally* N.T., 6/20/23; Guilty Plea, 6/20/23. The trial court thereafter imposed a sentence of 108-216 months of imprisonment for the persons not to possess conviction and two years of consecutive probation for the carrying a firearm without a license conviction. *See* Order of Sentence, 9/27/23. Wilson thereafter filed a post-sentence motion seeking a sentence modification based on the alleged

---

[2] Wilson pleaded guilty to person not to possess and carrying a firearm without a license; as part of the plea, the Commonwealth withdrew charges of tampering with or fabricating physical evidence and a summary offense. *See* N.T., 6/20/23, at 2.

unconstitutionality of the persons not to possess statute. **See** Mot. for Reconsideration, 10/3/23, at ¶¶ 1-9 (discussing the application of **Range v. Att'y Gen. of the United States of America**, 69 F.4th 96 (3d Cir. 2023) ("**Range I**"), *vacated by* **Garland v. Range**, 144 S.Ct. 2706 (2024).[3]  The trial court denied the motion.  **See** Order, 10/5/23.

Wilson took no direct appeal, but he later filed what the PCRA court construed as a PCRA petition.  Following appointment of PCRA counsel, Wilson filed an amended PCRA petition, in which he asserted the ineffectiveness of plea counsel for advising him to plead guilty notwithstanding **Range I** and **New York State Rifle & Pistol Ass'n, Inc. v. Bruen**, 597 U.S. 1 (2022) allegedly rendering sections 6105 and 6106 unconstitutional as applied to him. **See generally** PCRA Pet., 7/15/24.  Following the Commonwealth's answer to the PCRA petition, the PCRA court dismissed the petition without holding an evidentiary hearing.  **See** Order, 9/9/24.[4]  Wilson timely appealed, *pro se*,

---

[3] Federal circuit court holdings are non-binding on this Court, but may serve as persuasive authority.  **See**, **e.g.**, **Commonwealth v. Orie**, 88 A.3d 983, 1013 n.49 (Pa. Super. 2014).

[4] The dismissal order is dated September 6, but docketed September 9.

*see* Notice of Appeal, 10/3/24,[5] and he and the PCRA court complied with Pa.R.A.P. 1925.[6]

Wilson raises the following issue for our review:

1. Was trial counsel [] ineffective for advising [] Wilson to plead guilty without first raising an argument that 18 Pa.C.S.A. § 6105 and . . . § 6106 are unconstitutional as applied to [him], pursuant to the decisions in ***Range*** [***I*** and] . . . ***Bruen***, . . . as there was no reasonable basis for not raising this argument[,] and [] Wilson was prejud[i]ced as a result.

2. Did the [PCRA] court err in not scheduling a hearing and instead denying [] Wilson's PCRA petition?

Wilson's Br. at 4 (unnecessary capitalization omitted).

As both of Wilson's issues challenge the PCRA court's order dismissing his petition without a hearing, we address them together. Preliminarily, we also note that while Wilson frames his first question as involving his convictions for sections 6105 and 6106, he only included a challenge to 6105 in his Rule 1925(b) statement, and, accordingly, his assertion of error related

_____

[5] ***See Commonwealth v. Williams***, 151 A.3d 621, 624 (Pa. Super. 2016) (providing that "this Court is required to docket a pro se notice of appeal despite [the a]ppellant being represented by counsel").

[6] Wilson originally failed to file an ordered Rule 1925(b) concise statement of matters complained of on appeal, however, he petitioned in this Court for a remand to file the statement, which this Court granted based on the PCRA court's deficient Rule 1925(b) order. ***See*** Order, No. 1199 WDA 2024, 1/31/25. Wilson and the PCRA court complied with this Court's order thereafter.

to section 6106 is waived for our review. ***See Commonwealth v. Otero***, 860 A.2d 1052, 1055 (Pa. Super. 2004).

Our standard of review of an order dismissing a PCRA petition is well settled:

> Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. We view the record in the light most favorable to the prevailing party in the PCRA court. We are bound by any credibility determinations made by the PCRA court where they are supported by the record. However, we review the PCRA court's legal conclusions *de novo*.

***Commonwealth v. Staton***, 184 A.3d 949, 954 (Pa. 2018) (internal citation and quotations omitted). The PCRA petitioner "has the burden to persuade this Court that the PCRA court erred and that such error requires relief." ***Commonwealth v. Wholaver***, 177 A.3d 136, 144–45 (Pa. 2018) (internal citations omitted). Further, "it is well settled that this Court may affirm a valid judgment or order for any reason appearing as of record." ***Id***. at 145 (internal citation omitted). Additionally, "there is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary." ***Commonwealth v. Springer***, 961 A.2d 1262, 1264 (Pa. Super. 2008) (internal citation, quotations, and brackets omitted). ***See also Commonwealth v. Wah***, 42 A.3d 335, 338 (Pa. Super. 2012) (providing that a PCRA court need not hold an evidentiary hearing, but, rather, may dismiss

without an evidentiary hearing where there are no genuine issues of material fact in controversy).

In order to be eligible for PCRA relief, the petitioner must prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated circumstances found in Section 9543(a)(2), which includes the ineffective assistance of counsel. *See* 42 Pa.C.S.A § 9543(a)(2)(ii); *see also Commonwealth v. Benner*, 147 A.3d 915, 919–20 (Pa. Super. 2016). Generally, to prevail on an ineffectiveness claim, the petitioner has the burden to prove: "(1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance." *Benner*, 147 A.3d at 920 (internal citations and quotations omitted).[7] The

---

[7] Regarding "arguable merit," this Court has provided that, "[t]he first inquiry in an ineffectiveness claim is always whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit; for counsel cannot be considered ineffective for failing to assert a meritless claim." *Commonwealth v. Lott*, 581 A.2d 612, 614 (Pa. Super. 1990) (internal citation and quotations omitted). For the "no reasonable basis" prong, the petitioner must show that counsel "had no reasonable basis designed to effectuate his client's interests." *Id*. (internal citation and quotations omitted). Lastly, to establish prejudice, the petitioner "must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction." *Commonwealth v. Brown*, 161 A.3d 960, 965 (Pa. Super. 2017) (internal citation omitted).

failure to satisfy any of these prongs is fatal to a petitioner's claim. *See id*. Additionally, counsel is presumed effective. *See id*.

Wilson's issue hinges on the argument that section 6105 is unconstitutional as applied to him, based on the Second Amendment of the United States Constitution, and, accordingly, his conviction and sentence are unconstitutional, and plea counsel was ineffective for not challenging the constitutionality of section 6105 prior to advising Wilson to plead guilty.

This Court has set forth the relevant principles for constitutional challenges as follows. A statute is presumed to be constitutional and will only be invalidated if it clearly, palpably, and plainly violates constitutional rights. *See Commonwealth v. Bradley*, 232 A.3d 747, 756-57 (Pa. Super. 2020). The Supreme Court of the United States has also stated that "when legislation and the Constitution brush up against each other, a court's task is to seek harmony, not to manufacture conflict." *United States v. Rahimi*, 602 U.S. 680, 701 (2024) (internal citation, quotation marks, and brackets omitted). Relevant here, an as-applied challenge to a statute "does not contend that a law is unconstitutional as written[,] but that its application to a particular person under particular circumstances deprived that person of a constitutional right." *Bradley*, 232 A.3d at 757 (internal citation and indentation omitted). It is a challenger's "high burden" to show the unconstitutionality of a statute, and if there is any doubt that the challenger has met his burden, "then that

doubt must be resolved in favor of finding the statute constitutional." ***Id***. (internal citation and indentation omitted).

> Our Crimes Code sets forth the persons not to possess as follows:
>
> (1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S.A. § 6105(a)(1). Wilson's disqualification arises from subsection (b), enumerated disqualifying convictions, which includes murder. ***See id***., § 6105(b) (including, *inter alia*, murder convictions under section 2502).

In ***Commonwealth v. Farmer***, 329 A.3d 449 (Pa. Super. 2024), *appeal granted*, 343 A.3d 180 (Pa. Jul. 8, 2025), Farmer, previously convicted for robbery, was subsequently convicted of persons not to possess firearms and asserted a Second Amendment challenge to section 6105 as applied to him. The ***Farmer*** Court provided the following summary of the Second Amendment of the United States Constitution:

> The Second Amendment governs the people's right to keep and bear arms: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

***Farmer***, 329 A.3d at 451-52 (quoting U.S. Const. amend. II). The ***Farmer*** Court reviewed the United States Supreme Court's prior decisions in ***District of Columbia v. Heller***, 554 U.S. 570 (2008), ***Bruen***, and its subsequent

- 8 -

decision in ***Rahimi***. ***Farmer*** noted ***Heller*** "announced a strong presumption that 'the right of the people' referenced in the Second Amendment's operative clause 'is exercised individually and belongs to all Americans.'" ***Farmer***, 329 A.3d at 452 (quoting ***Heller***, 554 U.S. at 581).

As stated in ***Farmer***, the ***Bruen*** decision enunciated a two-part test to determine the constitutionality of laws restricting gun-possession rights: 1) whether the Second Amendment covered the conduct at issue, and 2) whether the regulation at issue was consistent with the country's historical tradition of firearms regulation. ***See Farmer***, 329 A.3d at 453.

Regarding the first part of the test, ***Farmer***, consistent with ***Rahimi***, concluded that felons are included within "the people" for purposes of the Second Amendment, and where the conduct is simply possessing the firearm, a prohibition on such "implicates conduct protected under the Second Amendment." ***See id***. at 455-58.

With respect to the second part of the test, ***Farmer*** noted ***Rahimi*** stated, *inter alia*, that "[f]rom the earliest days of the common law, firearm[s] regulations have included provisions barring people from misusing weapons to harm or menace others." ***Farmer***, 329 A.3d at 454 (quoting ***Rahimi***, 602 U.S. at 693). ***Farmer*** cited ***Rahimi***'s analysis of both surety laws, requiring persons to post bail if they were suspected and/or anticipated to likely misbehave (including misuse of firearms), and "going armed" laws, which

prohibited people, *inter alia*, from going armed with dangerous weapons to terrify people. *See Farmer*, 329 A.3d at 454. *Farmer* found "[n]oteworthy" the lesson *Rahimi* derived from such laws: "[t]aken together, the surety and going armed laws confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Farmer*, 329 A.3d 454 (quoting *Rahimi*, 602 U.S. at 698).

*Farmer* then found section 6105 consistent with this nation's historic tradition of firearms regulation and thus constitutional as applied to Farmer. In so ruling, *Farmer* noted "going armed" laws "prohibited the use of dangerous weapons to terrify people and imposed forfeiture of weaponry as a punishment." 329 A.3d at 458 (citing *Rahimi*, 602 U.S. at 697). In the context of Farmer's conviction for possessing a firearm and his prior conviction for gunpoint robbery, the Court concluded, "[W]e can safely conclude that our nation does indeed have a history and tradition of disarming people" under such circumstances. *Id*. The Court accordingly rejected Farmer's as applied challenge to the constitutionality of section 6105. *Accord Commonwealth v. Randolph*, 343 A.3d 1248, 1259 (Pa. Super. 2025) (affirming the constitutionality of section 6105 as applied to an appellant previously convicted of possession of a controlled substance with intent to deliver, since "the *Rahimi* Court highlighted that firearm prohibitions may apply to those

that pose a 'credible threat' to the safety of another[,]" and "[d]rug traffickers fit that mold").  With this background in mind, we proceed to consider Wilson's argument.

Wilson argues section 6105 is unconstitutional as applied to him.  He acknowledges his conviction of third-degree murder in 2007 following a non-jury trial.  **See** Wilson's Br. at 22.  However, Wilson asserts he was a "model prisoner" while incarcerated.  **Id**.  Additionally, he maintains that the person he killed in his murder case was a man who physically and sexually abused him and his mother when Wilson was a child.  **See id**.  Despite his third-degree murder conviction, Wilson now suggests that he was in "sudden heat," or "heat of passion," when he later, as an adult, encountered his victim, because his victim made suggestive remarks to him.  **See id**. at 23-24.[8]

_____

[8] This Court has explained the "heat of passion" defense as follows:

> A heat of passion defense, like the diminished capacity defense, is a partial defense, focused on the element of intent.  A defendant accused of murder may establish that he or she is guilty, not of murder, but rather of voluntary manslaughter, by proving that, at the time of the killing, he or she was acting under a sudden and intense passion resulting from serious provocation by the victim. Emotions encompassed by the term "passion" include anger, rage, sudden resentment[,] or terror which renders the mind incapable of reason.  Whether the provocation by the victim was sufficient to support a heat of passion defense is determined by an objective test: whether a reasonable [person] who was confronted with the provoking events would become impassioned to the extent that his[, or her,] mind was incapable of cool reflection.

*(Footnote Continued Next Page)*

Wilson argues that because he was in the heat of passion when he killed his victim, his "individual circumstances" show that he should not be disqualified from carrying a firearm. *See id*. at 25. He also suggests that the "battered person's syndrome," which was a viable defense to his murder charge, shows that he is not a threat to anyone other than his asserted abuser. *See id*. at 26.[9]

The PCRA court considered Wilson's arguments and concluded they merit no relief. Specifically, the court concluded that Wilson, "a convicted murderer . . . certainly poses a threat to the physical safety of others." PCRA Ct. Op., 3/19/25, at 4.

Following our review, we hold the PCRA court's conclusion is supported by the applicable law. There is no dispute Wilson was convicted of third-

_____

*Commonwealth v. Yaw*, 305 A.3d 1068, 1082 n.9 (Pa. Super. 2023) (quoting *Commonwealth v. Hutchinson*, 25 A.3d 277, 314-15 (Pa. 2011)).

[9] Traditionally known as "battered woman's syndrome," this theory "is not a defense in and of itself," but becomes relevant only if there is a theory of self-defense advanced at trial. *Commonwealth v. Otero-Velez*, 341 A.3d 67, 2025 WL 1276752 (Pa. Super. 2025) (unpublished memorandum at *3). *See also* Pa.R.A.P. 126(b) (non-precedential memoranda filed by this Court after May 1, 2019 are citable for their persuasive value). The "syndrome" is "a type of evidence which may be introduced on the question of the reasonable belief requirement of self-defense in cases which involve a history of abuse between the victim and the defendant." *Commonwealth v. Miller*, 634 A.2d 614, 622 (Pa. Super. 1993).

degree murder, notwithstanding his belated invocations of heat of passion and "battered person's syndrome."[10]  Wilson was convicted of a crime of violence, namely, third-degree murder, which requires a *mens rea* of "malice," that is, "[i]t comprehends not only a particular ill-will, but every case where there is wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty . . .."  ***Commonwealth v. Frye***, 319 A.3d 602, 607 (Pa. Super. 2024); ***see also*** 18 Pa.C.S.A. § 2502(c).  Wilson's murder conviction thus shows him to be a "credible threat" to the safety of others.  ***See Randolph***, 343 A.3d at 1259 (holding that prior convictions for drug trafficking "fit [the] mold" of being credible safety threats).  As such, section 6105 is constitutional as applied to him, consistent with ***Farmer*** and ***Randolph***.  Therefore, a challenge to the constitutionality of the statute, as applied, would have been unsuccessful.[11]  There is thus no arguable merit to this issue.  Stated otherwise, plea counsel

---

[10] As Wilson rightfully concedes, "[t]his is not the proper forum nor the proper time to relitigate the case that made [him] a person not to possess[,]" that is, the homicide case.  Wilson's Br. at 27.

[11] We find Wilson's invocation of the non-binding Third Circuit case ***Range I*** to be unavailing, as there, the disqualifying conviction was for the non-violent offense of fraud, specifically, "making a false statement to obtain food stamps."  ***See generally Range v. Att'y General of the United States***, 124 F.4th 218 (3d Cir. 2024) ("***Range II***").  We likewise find Wilson's citations to non-binding and now-overruled federal district court opinions unpersuasive.  ***See*** Wilson's Br. at 29-30.

cannot have been ineffective for failing to make a meritless argument. ***See***, ***e.g.***, ***Commonwealth v. Rivera***, 199 A.3d 365, 384 (Pa. 2018); ***accord Commonwealth v. Loner***, 836 A.2d 125, 132 (Pa. Super. 2003) ("Counsel cannot be deemed ineffective for failing to pursue a meritless claim."); ***Lott***, 581 A.2d at 614.  Because Wilson's issue is meritless, and no genuine issues of material fact exist, the PCRA court did not err in declining to hold an evidentiary hearing. ***See Springer***, 961 A.2d at 1264; ***Wah***, 42 A.3d at 338. We affirm the PCRA court's order dismissing his petition.

Order affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE:  12.09/2025